CARL E. BRANSON, Plaintiff-Appellee, v. THE DEPARTMENT OF REVE-
NUE, Defendant-Appellant.

Fourth District    No. 4—93—0826

Argued June 21, 1994.—Opinion filed December 6, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General (argued), of counsel), for appellant.

William P. Gavin (argued), of Brown & Gavin, of Belleville, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1989, the Illinois Department of Revenue (Department) issued notices of penalty liability (NPLs) to plaintiff, Carl E. Branson, and his wife, Bonnie Branson, as responsible parties pursuant to section $13^{1/2}$ of the Retailers' Occupation Tax Act (Act) (Ill. Rev. Stat. 1991, ch. 120, par. $452^{1/2}$). The penalties assessed related to unpaid taxes, interest, and penalties owed by Carbon, Inc. (Carbon), which operated Branson's Family Restaurant, from June 1986 through the restaurant's closing in January 1987. An administrative law judge (ALJ) recommended upholding the penalty assessment against plaintiff and recommended dismissing the assessment against Bonnie. The Department accepted both of the ALJ's recommendations.

On appeal to the circuit court, the court ruled that plaintiff had the responsibility for filing corporate tax returns and paying the taxes due, but because the Department failed to prove plaintiff wilfully failed to pay the taxes, the court reversed the Department's determination of plaintiff's liability. The Department appeals, arguing that it established a *prima facie* case of plaintiff's wilfulness in failing to pay the sales taxes, and that plaintiff failed to negate that proof.

We affirm in part and reverse in part.

# I. BACKGROUND

At the hearing before the ALJ, the Department offered into evidence its group exhibit No. 1 under the certification of records signed by the Department's Director. The exhibit consisted of (1) NPL No. 1881 issued July 31, 1989, to Bonnie showing a total liability of $26,372.11; (2) NPL No. 1880 issued on July 31, 1989, to plaintiff showing a total liability of $26,372.11; (3) United States Post Office return receipt cards signed by plaintiff; (4) a protest letter dated August 10, 1989, signed by William P. Gavin for both plaintiff and Bonnie; (5) notice of hearing dated February 15, 1989, setting the matters for hearing; (6) a discontinuation of tax form signed by plaintiff in his capacity as president of Carbon dated March 30, 1987, and received by the Department on April 12, 1987; and (7) an Illinois business taxpayers' application for registration naming plaintiff as president and Bonnie as secretary, signed by plaintiff.

Plaintiff and Bonnie objected to the admission of this group exhibit because the certification of records did not specifically identify the documents within the exhibit purportedly being certified. The ALJ overruled their objection and admitted the exhibit into evidence in its entirety. Plaintiff then moved to dismiss the Department's case on the ground that the Department did not prove the essential elements of a *prima facie* case, but the ALJ denied the motion.

In 1986 and 1987, plaintiff worked at both the Carbon restaurant and another restaurant owned by a separate corporation. Until February 1986, he was shareholder, officer, and director of both corporations and kept the corporate records. After February 1986, he became sole shareholder, officer, and director of Carbon.

Plaintiff was in charge of quality control of the food, quality of help, managers, and overseeing the operation of the Carbon restaurant, which was open 24 hours a day. He hired Marion Comp as bookkeeper for Carbon just prior to the incorporation of Carbon in late 1985. Comp's duties consisted of paying bills, making bank deposits, and tallying daily receipts.

In order to pay the retailers' occupation tax (sales tax), the restaurant kept a daily log, which totaled all receipts. These daily logs were forwarded to the TACS Company (TACS), an accounting firm, to prepare tax forms, and then returned to Comp, who in turn presented them to plaintiff for his signature. Comp wrote the checks to pay the taxes, and plaintiff introduced a photocopy of a check to the Department for such taxes signed by Marion Comp, dated in December 1985.

In early December 1986, plaintiff discovered problems with Carbon's corporate finances. Comp was on vacation, and plaintiff attempted to pay the daily bills. Although the corporate checkbook

showed a positive cash amount, the bank informed him of an overdraft. Carbon continued to function as a corporation 30 to 40 days thereafter until January 25, 1987.

The Department does not dispute that plaintiff did not know, prior to January 25, 1987, that Illinois sales tax had not been paid nor returns filed. Plaintiff testified that he never chose one creditor to pay before the State. He discovered sales tax was owed to the State when confronted by a revenue agent after the Carbon restaurant ceased operations. Carbon had no funds in its account on January 25, 1987, and plaintiff used personal funds to pay Carbon's employees.

On cross-examination, plaintiff admitted he was the sole shareholder and director of Carbon. He spoke to Comp daily and saw daily receipts on a pinup board. He was also aware of overhead costs and cash flow problems during the summer of 1986. When Comp returned from vacation in December 1986, plaintiff became aware that the bank was correct and Comp's bookkeeping was incorrect. Also, suppliers began complaining of insufficient funds checks and were subsequently paid in cash. While Comp was away, plaintiff found a drawer full of unpaid bills, but he did not examine them to see whether any were obligations owed to the State of Illinois.

The restaurant's checks were given to TACS for reconciliation on a monthly basis. Comp dealt with TACS, but plaintiff reviewed the TACS monthly statement. When he decided to close the business in January 1987, he did not contact the Department to see if the corporation owed any outstanding assessments as a result of sales tax returns. As treasurer of Carbon, plaintiff admitted that he was the officer in charge of Carbon's financial affairs and was obligated to collect sales tax from its customers and remit the funds to the State. He signed the discontinued business form dated January 14, 1987, but actually closed the restaurant on January 25, 1987. He assumed tax returns were mailed for October, November, and December 1986. He spoke to Comp, but she "did not know a lot herself." Prior to the closing, he learned the corporation was three months delinquent in rent. During December 1986 and January 1987, he drew a weekly salary.

Based upon this evidence, the ALJ found that plaintiff was a responsible party and had wilfully failed to pay the taxes at issue. The ALJ recommended the penalty assessment be finalized in its entirety. The Department accepted the ALJ's decision, and plaintiff filed this action for administrative review.

The circuit court held that the Department failed to prove plaintiff acted wilfully and remanded the case to the Department for

further evidence on the issue of plaintiff's wilfulness. The parties filed a joint motion to modify that order because neither had any additional evidence on the issue of wilfulness to present, and they wished to proceed to appeal to the appellate court on the basis of the existing record. The circuit court then reversed the Department's determination and ruled that because the record contained no evidence of plaintiff's wilfulness, the Department's determination of plaintiff's liability was against the manifest weight of the evidence. This appeal followed.

## II. ANALYSIS

### A. *Admissibility of the Department's Documents*

Plaintiff contends that the circuit court was correct in reversing the Department's determination that he was liable for the penalty assessed because documents introduced by the Department were inadmissible and, in any case, did not constitute *prima facie* evidence of wilfulness. The circuit court did not rule that the documents introduced by the Department were inadmissible but did rule that they failed to prove plaintiff acted in a wilful manner.

■ At the time of the occurrences at issue here, section $13^1/2$ of the Act provided in relevant part as follows:

> "The Department shall determine a penalty due under this Section according to its best judgment and information, and such determination shall be prima facie correct and shall be prima facie evidence of a penalty due under this Section. Proof of such determination by the Department shall be made at any hearing before it or in any legal proceeding by reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall, without further proof, be admitted into evidence before the Department or any legal proceeding and shall be prima facie proof of the correctness of the penalty due, as shown thereon." (Ill. Rev. Stat. 1991, ch. 120, par. $452^1/2$.)

This language was added by Public Act 84—1454 (Pub. Act 84—1454, art. II, § 1, eff. January 6, 1987 (1986 Ill. Laws 4287, 4292-93)). This section was repealed effective January 1, 1993, by Public Act 87—205 (Pub. Act 87—205, art. IV, § 4—15, eff. January 1, 1993 (1991 Ill. Laws 1329, 1471)), but similar language is included in section 3—7(a) of the Uniform Penalty and Interest Act, effective January 1, 1993. 35 ILCS 735/3—7(a) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 120, par. 2603—7(a)).

Plaintiff argues that the Department did not properly certify the documents submitted in the hearing before the ALJ to establish the

penalty due. Plaintiff raises two objections to the documents in this regard. First, the certification did not specifically identify each document submitted by name. Second, the Department either failed to submit its entire record or failed to state it was doing so. However, the statute does not contain any such requirements for admission of the Department's record, and we decline to write them in.

## B. Department's Statutory Interpretation

■ Section 13$^1$/$_2$ of the Act (in effect for the relevant time periods) provided that a responsible individual may be liable for sales taxes under certain circumstances where the corporation is unable to pay the taxes owed to the Department:

> "*Any officer or employee* of any corporation subject to the provisions of this Act *who has the control, supervision or responsibility of filing returns and making payment* of the amount of tax herein imposed in accordance with Section 3 of this Act *and who wilfully fails to file such return or to make such payment* to the Department or willfully attempts in any other manner to evade or defeat the tax *shall be personally liable* for a penalty equal to the total amount of tax unpaid by the corporation, including interest and penalties thereon[.] The Department shall determine a penalty due under this Section according to its best judgment and information, and such determination shall be prima facie correct and shall be prima facie evidence of a penalty due under this Section. Proof of such determination by the Department shall be made at any hearing before it or in any legal proceeding by reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. *Such reproduced copy shall, without further proof*, be admitted into evidence before the Department or any legal proceeding and shall *be prima facie proof of the correctness of the penalty due*, as shown thereon." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 452$^1$/$_2$.

The Department contends that the statute provides the introduction of its record establishes *prima facie* proof of the correctness of its assessment of a penalty against a taxpayer, and, without more, establishes all the elements necessary for the imposition of a penalty against an individual. We agree.

■ As a general rule, courts will accord deference to the interpretation placed upon a statute by the agency charged with its administration. An agency's interpretation is not binding, however, and will be rejected when erroneous. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (and cases cited therein).)

"[W]here a statute is clear and unambiguous, a court must enforce the law as enacted, without considering other aids of construction." *Heck v. Central Illinois Light Co.* (1992), 152 Ill. 2d 401, 406, 604 N.E.2d 939, 941.

■ Plaintiff argues that under the statute, the Department's record serves only to establish the correctness of the *amount* of such penalty, not the existence of the elements required to establish a penalty against an individual. While the circuit court did not explicitly make the same point, its ruling that the record was devoid of *any* evidence of plaintiff's wilfulness must be based upon such an interpretation. We disagree with plaintiff's interpretation.

Section 13$^1$/$_2$ of the Act does not limit the *prima facie* proof to the amount of the penalty only. As shown by another section in the same Act, the legislature clearly knew how to limit *prima facie* determinations to amounts only, in contrast to the existence of the penalty itself. For example, section 4 of the Act, dealing with departmental determinations of the amount of tax due in examining and correcting returns, provides that "Such certified reproduced copy *** shall be prima facie proof of the correctness of the *amount* of tax due, as shown therein." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 120, par. 443.

The language of section 13$^1$/$_2$ of the Act would be senseless without construing it to mean that the Department's determination was *prima facie* proof of all elements of the penalty. The Department can assess no penalty without finding wilfulness. Thus, in the absence of wilfulness on the part of the responsible individual, the correct amount of any penalty is $0. Accordingly, we hold that the Department's determination of a penalty due against a responsible individual establishes a *prima facie* case regarding all the statutory elements required for imposition of such a penalty.

In so holding, we have considered the recent ruling of the First District Appellate Court in *Griffith v. Department of Revenue* (1994), 266 Ill. App. 3d 838, 842, 640 N.E.2d 1262, 1265, where, in a case similar to this one, the court held that the phrases "*prima facie* evidence of a penalty due" and "*prima facie* proof of the correctness of the penalty due" do not (in the context of the Act) mean the same as "*prima facie* case." We respectfully disagree, noting that the legislature intended to shift the burden to the taxpayer to overcome the Department's *prima facie* case. This shifting of the burden in tax cases is entirely reasonable, given the greater availability to the taxpayer of records and witnesses to rebut the Department's claim of wilfulness, and as this very case shows, taxpayers can successfully rebut that claim.

We further note that our interpretation of section 13$^1$/$_2$ of the Act accords with interpretations Federal courts have given similar Federal tax statutes. Section 6672(a) of the Internal Revenue Code of 1986 provides that a person responsible for withholding and paying over taxes who wilfully fails to do so is liable for a penalty equal to the total amount of the unpaid taxes. (26 U.S.C.A. § 6672(a) (West 1989).) In *Brounstein v. United States* (3d Cir. 1992), 979 F.2d 952, 954, the court held that a section 6672 assessment against a responsible person is equivalent to the assessment of a tax and carries with it a rebuttable presumption that it is correct. Significantly, the court further held that "the IRS's introduction of certified copies of the assessment [at the trial level] shifted to [the taxpayer] the burden of going forward with evidence to show that the assessment against him under section 6672 was incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not wilfully fail to pay the amount due to the IRS." *Brounstein*, 979 F.2d at 954; see also *United States v. Schroeder* (7th Cir. 1990), 900 F.2d 1144.

### C. *The Department's Finding That Plaintiff Wilfully Failed To Pay Tax*

■ A voluntary, conscious, and intentional failure to pay taxes under the Act satisfies the requirements of wilful failure as used in section 13$^1$/$_2$ of the Act. Whether an employee or officer knowingly, voluntarily, and intentionally fails to make a tax payment is an issue of fact determined by the trier of fact. (*Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 30, 476 N.E.2d 413, 418.) An agency's findings and conclusions of fact are held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992).) Thus, this court will not disturb the Department's determination of plaintiff's wilfulness in failing to pay the taxes at issue unless it is against the manifest weight of the evidence. *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507, 516, 554 N.E.2d 155, 159, 163.

The circuit court ruled that "[t]he record is void of any testimony or documentary evidence to prove the second element [(wilfulness)] of the statute." This, of course, is inaccurate in view of our construction of the Act to mean that the Department's certified record constitutes *prima facie* proof of wilfulness.

■ Plaintiff introduced evidence at the hearing before the ALJ regarding his lack of wilfulness in failing to pay the taxes. Because the Department did not introduce any evidence refuting plaintiff's testimony in this regard, plaintiff characterizes his evidence as "un-

contradicted." The ALJ specifically found (and the Department accepted) that plaintiff did not know of any unpaid retailers' occupation taxes until after January 25, 1987, when the business was closed. However, this finding of fact directly conflicts with a portion of the penalty assessment by the Department against plaintiff.

The record does contain evidence which supports the Department's finding of wilfulness for taxes due from November 1, 1986, through the restaurant's closing on January 25, 1987. Plaintiff operated the restaurant on a cash basis for 30 to 40 days before it closed, handling the receipts and disbursements during this time. Thus, plaintiff had constructive knowledge sufficient to support a finding of wilful failure to pay the taxes during this time period. Retailers' occupation taxes for taxpayers whose average monthly liability was between $200 and $10,000 in 1987 or $25,000 in 1985, which includes Carbon, were payable on the last day of the month for the tax liability for the *preceding* month. (Ill. Rev. Stat. 1985, ch. 120, par. 442.) As a result, the November 1986 return and payment were due December 31, 1986, well after plaintiff discovered the problems in the checking account during Comp's absence.

Plaintiff testified he assumed the duty to write the tax checks sometime in early December 1986. Therefore, he should have written the check to pay the sales taxes due for the period from November 1, 1986, until January 25, 1987, when the restaurant closed. He was the person paying the bills, and he paid suppliers in cash during this time. Plaintiff would have been collecting sales tax on sales of meals to customers; however, none of the amounts collected from customers on such sales were remitted to the Department. Plaintiff's failure to segregate the amounts collected as retailers' occupation taxes and pay such amounts to the Department was clearly a wilful act.

Plaintiff testified that he was aware of the responsibility to pay sales taxes collected to the Department, but he did not know there were any unpaid taxes until after January 25, 1987, when he was confronted by a Department agent. This is similar to the situation in *Heartland Investments*, wherein the defendants made retail sales and collected taxes from their customers. The court there found it significant that at the time the tax payments were initially due, sufficient funds were available to satisfy the tax obligations, but the defendants chose to use the funds to pay other creditors. (*Heartland Investments*, 106 Ill. 2d at 30, 476 N.E.2d at 418.) Plaintiff in this case testified that he did not choose any creditors over the Department. However, in utilizing funds collected from customers as sales taxes to pay other creditors while tax obligations went unpaid, plaintiff was disregarding an obvious or known risk. "It is clear that where the corporation

collects taxes while doing business, but the moneys are spent on other corporate obligations, the courts will find a wilful failure to pay taxes." *Department of Revenue ex rel. The People of the State of Illinois v. Corrosion Systems, Inc.* (1989), 185 Ill. App. 3d 580, 582, 541 N.E.2d 858, 860.

Plaintiff's position is stronger, however, for the periods prior to his assumption of the bookkeeping duties, when he only reviewed and signed the returns and thought the bookkeeper was writing checks for the taxes due. He might have been able to determine that the taxes were not being paid through an inspection of the company's bank statement, but no finding was made in this regard, and his reliance on the system in place for paying taxes appears reasonable.

Plaintiff argued before the ALJ that wilfulness could be found, if at all, only for the December 1986 and January 1987 taxes. This reasoning in actuality means plaintiff wilfully failed to *pay* taxes and file returns from early December 1986 forward, which results in liability for taxes *due* for November 1986 forward. This argument has merit because plaintiff was signing the returns and until early December 1986 was justified in assuming Comp was writing a check for the taxes due. Accordingly, we conclude that plaintiff successfully rebutted the Department's *prima facie* showing of his wilful failure to pay the taxes at issue, which were due for the period from June 1 through October 31, 1986.

The Department's penalty assessment was not against the manifest weight of the evidence with regard to taxes due for the period from November 1, 1986, until the closing of the business, and we therefore reverse the circuit court's decision holding otherwise. The record does not provide an itemization of the amounts due for each month in this time period, necessitating that we remand for further proceedings to determine such amounts. However, we conclude that plaintiff successfully rebutted the presumption that he wilfully failed to pay taxes for the previous time periods and uphold the circuit court's decision to that extent.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision regarding the penalty assessment related to the taxes due for the period from June 1, 1986, through October 31, 1986, reverse the court's decision regarding the penalty assessment related to taxes due for the period November 1, 1986, through the cessation of the business'

operations, and remand the case for further proceedings to determine such amounts.

Affirmed in part; reversed in part and remanded with directions.

KNECHT, P.J., and COOK, J., concur.