In re William J. STOECKER, Debtor.

STATE OF ILLINOIS, DEPARTMENT OF REVENUE, Appellant,

v.

Thomas E. RALEIGH as Trustee of the Estate of William J. Stoecker, Appellee.

Nos. 93 C 2160, 89 B 2873.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 31, 1994.

Opinion Granting Rehearing and Denying Certification for Appeal March 23, 1995.

James Douglas Newbold, Illinois Atty. General's Office, Chicago, IL, for Etolen and Buchanan Masonry, State of Ill., Dept. of Revenue.

Robert Radasevich, David A. Eide, George Michael Hoffman, Neal, Gerber & Eisenberg, Chicago, IL, for Thomas E. Raleigh.

Thomas E. Raleigh, Raleigh and Helms, Chicago, IL, for William J. Stoecker.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

This case is before the court on the appeal of the State of Illinois Department of Revenue ("Department") from the United States Bankruptcy Court for the Northern District of Illinois. *In re Stoecker,* 151 B.R. 989 (Bankr.N.D.Ill.1993) (Squires, J., presiding). The principal issue in this case is whether Rule 3002 of the Federal Rules of Bankruptcy Procedure ("Rule ____") acts as a bar date to exclude late filed priority claims in a Chapter 7 case. The court holds that Rule

3002 does not bar late filed priority claims. In addition, the court concludes that principles of equitable subordination should determine whether late filed priority claims are entitled to distribution, and if so, the particular distribution level they are entitled to under 11 U.S.C. § 726. For the following reasons, the bankruptcy court's decision is reversed and remanded for further proceedings in accordance with this opinion.

## BACKGROUND

This case began as an involuntary Chapter 11 petition against William J. Stoecker ("Debtor") and was converted to Chapter 7 on February 26, 1990. Thomas E. Raleigh ("Trustee") was appointed the Chapter 11 trustee of the Debtor's estate and was reappointed as the Chapter 7 trustee. Pursuant to 11 U.S.C. § 341(a), a meeting of creditors was held on March 28, 1990. As required by Rule 3002(c), all proofs of claim were to be filed on or before June 26, 1990 ("the bar date"), ninety days after the meeting. On July 25, 1989, the Department timely filed three proofs of claim totalling $14,852.03.

Prior to the above proceedings, the Debtor had purchased an aircraft from Prewitt Leasing, Inc. ("Prewitt") on September 30, 1988. At that time, he was president and sole director of Chandler Enterprises, Inc. ("Chandler"). Chandler subsequently leased the aircraft to Grabill Corporation ("Grabill"), a corporation in which the Debtor was president and sole shareholder. Neither Chandler nor Prewitt paid any sales/use tax, withholding tax, or income tax on Chandler's purchase of the aircraft. The Debtor states that his attorney advised him that there was no sale or use tax properly assessable or payable as a result of the purchase by Chandler or the lease of the aircraft by Chandler to Grabill. Chandler was involuntarily dissolved by the Illinois Secretary of State on June 1, 1990.

After the Department received notice of the Debtor's bankruptcy filing, the Department researched his liability to the Department. Apparently due to Chandler's failure to register with the Department and to file any tax returns, the Department did not determine that the Debtor was an officer of Chandler during this initial search. Nevertheless, in approximately February, 1990, the Department conducted a separate investigation into the records of the Federal Aviation Administration. At that time, the Department learned of Chandler's purchase of the aircraft. The Department wrote two letters to Chandler dated March 7, 1990 and June 7, 1990 seeking additional information in order to ascertain whether the purchase of the airplane was subject to use tax. Chandler did not respond to either letter.

On September 7, 1990, the Department issued a Notice of Penalty Liability against Chandler. Between September 26, 1991 and April 9, 1991, the Department attempted to contact Chandler and its officers but was unsuccessful. Subsequently, a Notice of Penalty Liability was issued against the Debtor on August 15, 1991. The Department sent the Debtor a demand for full payment of the tax liability claimed on September 25, 1991. On January 21, 1992, approximately 18 months after the bar date, the Department filed a proof of claim in the amount of $1,476,196.86 for Retailers' Occupation/Use Tax allegedly owed by the Debtor as the responsible officer of Chandler.

The Trustee objected to the January 21, 1992 proof of claim filing because it was filed after the bar date fixed by Rule 3002(c). In addition, the Trustee also argued that the Debtor is not liable for the use tax under the "occasional sale" exemption.

In the bankruptcy court, the Department argued that the court should allow the claim as an amendment to the earlier filed proofs of claim pursuant to Fed.R.Civ.P. 15. In the alternative, the Department asked the bankruptcy court to use its equitable powers to allow the claim.

In its Memorandum, Opinion, and Order dated November 25, 1992, the bankruptcy court sustained the Trustee's objection and did not allow the Department's claim. It found that the Department's proof of claim was tardily filed. The court reasoned that the claim was an entirely new claim, and not an amendment to an earlier filed claim. Accordingly, the amendment was barred by Rule 3002(c). Furthermore, the court de-

clined to allow the claim under its equitable powers.

The Department filed a motion for reconsideration of the bankruptcy court's decision to sustain the Trustee's objection on December 10, 1992. The motion was based in part on the *In re Rago*, 149 B.R. 882 (Bankr. N.D.Ill.1992) case, which was decided two days prior the court's original ruling, and reached a contrary result. The court denied the motion for reconsideration on February 23, 1993.

The Department now appeals the bankruptcy court's decision. This action was a core proceeding before the bankruptcy court under 28 U.S.C. § 157(b)(2)(B). This court has jurisdiction pursuant to 28 U.S.C. § 158(a).

## DISCUSSION

■ Rule 8013 provides that a district court must accept the bankruptcy court's findings of fact unless clearly erroneous. Fed.R.Bankr.P. 8013; *In re Tolona Pizza Prod. Corp.*, 3 F.3d 1029, 1033 (7th Cir.1993). However, the court may independently examine the bankruptcy court's conclusions of law. *In re Yonikus*, 996 F.2d 866, 868 (7th Cir. 1993). Accordingly, this court subjects the bankruptcy court's conclusions of law to *de novo* review. *In re UNR Indus., Inc.*, 986 F.2d 207, 208 (7th Cir.1993).

### I. *Preliminary Issue*

■ The court must first determine whether the Department improperly raised new matters before the bankruptcy court in its motion for reconsideration. The Trustee contends that the Department improperly used its motion to argue for the first time that untimeliness can never constitute a proper basis for disallowance of a proof of claim. This theory was espoused by Bankruptcy Judge Wedoff in *In re Rago*.

The Trustee cites *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557 (7th Cir.1985), to support the proposition that motions to reconsider serve "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource*, 762 F.2d at 561 (citing

*Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984)). Moreover, such motions should not "serve as the occasion to tender new legal theories for the first time." *Id.* The Trustee also cites *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1336 (7th Cir.1992) for the broad proposition that a legal argument raised for the first time on a motion for reconsideration is waived if not presented before judgment was entered.

· In response, the Department argues that *In re Rago* represents a significant development in the law pertaining to the area of allowances. Furthermore, the Department subsequently brought to our attention *In re Vecchio*, 20 F.3d 555 (2nd Cir.1994) which adopted the rationale of *In re Rago* and was decided after the court denied the motion for reconsideration. The bankruptcy court in the case at hand relied heavily on *United States v. Vecchio*, 147 B.R. 303 (E.D.N.Y. 1992), the decision that *In re Vecchio* explicitly reversed. *In re Vecchio* at 556. It is also significant to note that the author, Judge Wedoff, of *In re Chirillo*, 84 B.R. 120 (Bankr. N.D.Ill.1988), a case cited with approval by the bankruptcy court in this case, later rejected *Chirillo* by stating that the case was based on the mistaken assumption that a late filed claim is disallowed. *In re Rago*, 149 B.R. at 885.

In light of these developments, this court holds that the Department's new argument is properly before the court on appeal. Both *In re Rago* and *In re Vecchio* represent highly persuasive authority that the Department could not have presented to the bankruptcy court before it delivered its opinion.

Furthermore, the court does not read the *Havoco* decision as broadly as the Trustee. In that case, the court simply held that a Fed.R.Civ.P. 59(e) motion to alter or amend the judgment "cannot be used to raise new arguments which could and should have been raised before judgment was entered." *Havoco*, 971 F.2d 1332 at 1336. The Trustee correctly points out that, before the bankruptcy court entered judgment in this case, limited authority was available to the Department to support the theory it now advances.

However, this court can not conclude that a reasonable litigant in the Department's position should have raised the new argument prior to the bankruptcy court's decision, particularly when it could not have known about *In re Rago* or *In re Vecchio.*

Therefore, the court holds that the Department's new argument is properly before the court on appeal.

## II.  *Interrelation of Rule 3002 and 11 U.S.C. §§ 501, 502 and 726*

█ The principal issue in this case is whether Rule 3002 acts as a bar date to exclude late filed priority claims in a Chapter 7 proceeding.  That rule provides in pertinent part:

(a) NECESSITY FOR FILING.  An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed....

(c) TIME FOR FILING.  In a chapter 7 liquidation ... a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

Fed.R.Bank.P. 3002.  There are also several code provisions dealing with the filing and allowance of proofs of claim, and distribution of property of the estate.  Section 501(a) states that "[a] creditor ... may file a proof of claim."  11 U.S.C. § 501(a).  Section 502(a) then explains that, "[a] claim ..., proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects."  11 U.S.C. § 502(a).  Section 502(b) lists eight categories upon which a party in interest can base its objection.  Of particular significance is the provision allowing a party to object if the claim is unenforceable under "applicable law."  11 U.S.C. § 502(b)(1).

Finally, § 726 describes the distribution of property of the estate:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such a claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate form the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

11 U.S.C. § 726.

The Department argues that because these code sections are in conflict with Rule 3002, the code provisions should prevail.  *U.S. v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089–90 (6th Cir.1990).  According to the Department, a conflict exists because Rule 3002 makes it clear that for a proof of claim to be allowed it must be filed within 90 days after the date set for the meeting of creditors.  In contrast, § 501 contains no prohibition on the filing of claims after the bar date and § 502 states that a claim is allowed

assuming the absence of a valid objection. None of the categories listed in § 502(b) upon which a party can base an objection explicitly includes the late filing of a claim. The Department emphasizes that §§ 726(a)(2)(C) and 726(a)(3) explicitly provide for "allowed claims, proof of which is *tardily* filed." (emphasis added). This approach was advanced by the recent *In re Rago* case.

The bankruptcy court rejected this argument and did not find that Rule 3002 was in conflict with the code. *In re Stoecker*, 151 B.R. at 995. The court stated that § 502(b)(1) provides for disallowance of a claim that is unenforceable under applicable law and that Rule 3002(c) constitutes applicable law. *Id.* Therefore, the court concluded that § 502(b)(1) disallows a claim not filed pursuant to Rule 3002(c) when a party in interest raises an objection to the claim. *Id.*

According to the Department, this rationale is flawed because there is still a conflict between Rule 3002 and § 726(a). In its opinion denying the motion for reconsideration, the bankruptcy court addressed this problem. It noted that, during those infrequent situations when there are sufficient funds available to fully pay all claims that were both timely and tardily filed, the trustee would not need to file an objection to late filed claims. The court stated that in these cases there is no need for a trustee to object to late filed claims because there are enough funds to pay all claims.

In response, the Department argues that the bankruptcy court's reasoning is flawed for three reasons. First, it assumes that a claim which is untimely filed under Rule 3002 is allowed under § 502(a) unless the trustee objects to it. However, Rule 3002 explicitly states that a claim not filed in conformity with it is not allowed. Second, the court's position also assumes that a late filed claim is only disallowed if the trustee files an objection. If the trustee does not object, the claim is allowed. Third, the court's conclusion is subject to abuse because § 502(a) allows any party in interest to object. Thus, a creditor with a timely but subordinated claim would always object to a late filed claim to increase its distribution. A debtor who is

entitled to all funds left over after payment of allowed claims would also object to late claims for the same reason.

The Department urges the court to reject the position taken by courts in cases exemplified by *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993) (en banc). *In re Zimmerman* was a Chapter 13 case and described two types of allowance of claims: 1) procedural allowance under § 501 which looks to Rule 3002 to establish time limits and 2) substantive allowance pursuant to § 502 where a claim is considered on the merits. *Id.* at 198. According to this analysis, a claim is deemed filed under § 501(a) only if it is filed within the time limits set by Rule 3002. *Id.* If the claim is filed late it is not allowed, and § 502 never comes into play. *Id.; see also In re Johnson*, 156 B.R. 557 (Bankr.N.D.Ill.1993). The Trustee attempts to extend this rationale to resolve the conflict between Rule 3002 and §§ 726(a)(2)(C) and 726(a)(3). It asserts that the § 726 provisions provide only for distribution of claims allowed on the merits under § 502.

Not surprisingly, the Trustee relies heavily on *In re Zimmerman* to support his position that tardiness is a ground for disallowance of a claim under § 502. That case recognized that § 501(c) contemplates a timeliness requirement: "If a creditor does not *timely* file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." (emphasis added). *In re Zimmerman*, 156 B.R. at 195–96. It also noted that legislative history indicates that Congress intended for the Bankruptcy Rules to contain the procedural aspects of bankruptcy practice. *Id.* at 197.

The Trustee next tries to explain why the "tardily filed" language exists in §§ 726(a)(2)(C) and 726(a)(3). It states that it is appropriate for the provisions to contain this language to distinguish substantively meritorious claims from substantively infirm ones. Further, it contends that *In re Rago* does not apply here because that case involved a late filed original claim, whereas the Department has maintained throughout that its claim is an amendment of a previously filed timely claim. *See In re Unroe*, 937 F.2d 346 (7th Cir.1991).

This court holds that Rule 3002 does not act as a bar date to exclude late filed priority claims in a Chapter 7 case. The decision in *In re Vecchio*, 20 F.3d 555 (2nd Cir.1994) is particularly persuasive. It stated that, "to the extent Rule 3002 suggests that a late filed claim must be disallowed, it is inconsistent with the text of §§ 726, 502, and 501." *In re Vecchio*, at 559; *Cardinal Mine*, 916 F.2d at 1089. The court observed that § 501 does not impose a timeliness requirement. *In re Vecchio*, at 559. Similarly, not only is there no requirement in § 726(a) that allowance of a claim requires a timely filing, but §§ 726(a)(2)(C) and 726(a)(3) expressly order the payment of such claims. *Id.* at 558. Furthermore, untimeliness is not listed as a grounds for disallowance under § 502. *Id.* at 558–59. This court rejects the Trustee's notion that the "tardily filed" language was inserted in these provisions to remove substantively infirm claims from distribution. There is no logical reason for Congress to provide an entire list of grounds for disallowance in one provision entitled "Allowance of claims or interests," while inserting another ground for disallowance in a separate provision entitled "Distribution of property of the estate."

Accordingly, this court can only conclude that *In re Hausladen*, 146 B.R. 557, 559 (Bankr.D.Minn.1992) was correct when it stated that Rule 3002's erroneous implication that filing within the prescribed period is a prerequisite to allowance "arose when the drafters of the new Rule 3002 hastefully copied the substance of *old* Rule 302 without paying any attention to the major change in the underlying statute." (emphasis in original). *See also In re Rago*, 149 B.R. at 885. Section 726 does not bar tardily filed claims. *In re Vecchio*, at 559 (citing *Cardinal Mine*, 916 F.2d at 1091).

Since *In re Zimmerman* is a Chapter 13 case, the court will not apply it here. Unlike Chapter 13 cases where payments are distributed under a plan, § 726 provides for the order of distribution of property of the estate in Chapter 7 cases. Even if *In re Zimmerman* resolves the conflict between Rule 3002 and §§ 501 and 502, it simply can not resolve the conflict between Rule 3002 and

§§ 726(a)(2)(C) and 726(a)(3). Therefore, the court will not apply the reasoning of *In re Zimmerman* to this Chapter 7 case.

Moreover, the court in *In re Vecchio* saw no relevance to the fact that the Internal Revenue Service in that case filed amended claims of a previously filed timely claim, as opposed to a late filed original claim. Since the facts in this case are similar, the court does not believe it is necessary to decide whether the Department filed an amended or original claim. Additionally, the court agrees with the Department that the other cases the Trustee cites in support of its argument, i.e., *Wilkens v. Simon Brothers, Inc.*, 731 F.2d 462 (7th Cir.1984), *In re Danielson*, 981 F.2d 296 (7th Cir.1992), and *Holstein v. Brill*, 987 F.2d 1268 (7th Cir.1993) do not address the specific issue in this case.

■ We disagree with the decisions in other jurisdictions which have subordinated first-tier priority claims to the third-tier of distribution as non-priority claims based on the tardiness of their filing. *See IRS v. Ulrich (In re Mantz)*, 151 B.R. 928, 930–31 (9th Cir. BAP 1993); *In re Elec. Management, Inc.*, 133 B.R. 90, 92 (Bankr.N.D.Ohio 1991); *In re Mayville Feed & Grain, Inc.*, 123 B.R. 245, 246–47 (Bankr.E.D.Mich.1991). As stated in *In re Vecchio*:

> These courts have also read a timeliness requirement into § 726(a)(1) despite the absence of such language in that provision or in others in the Code, and have failed to address the inconsistencies that arise as a result of their narrow reading of § 726(a)(1) to exclude late filed priority claims, their broad reading of § 726(a)(3) to include late filed priority claims, and their construction of Rule 3002 to permit subordination and not disallowance of such claims.

20 F.3d at 559.

Nevertheless, the court differs with the Department's contention that priority claims, regardless of when they are filed, are automatically entitled to receive a first level distribution pursuant to § 726(a)(1). The court agrees with *In re Rago* that such a rule would not encourage finality in the administration of claims. *In re Rago*, 149 B.R. at 888 (citing *In re Evanston Motor Co.*, 26

B.R. 998, 1005 (N.D.Ill.1983)). This concern is particularly valid when claimants deliberately or negligently fail to file their claims within the time limit established by the Bankruptcy Rules. *Id.*

■ Therefore, the court concludes that bankruptcy courts should use principles of equitable subordination when dealing with late filed priority claims. *Id.* at 889–90; *In re Vecchio*, at 560; *see also In re Virtual Network Serv. Corp.*, 902 F.2d 1246 (7th Cir. 1990). As discussed in *In re Rago*, 149 B.R. at 889–90, § 726(a) provides that property of the estate shall be distributed "[e]xcept as provided in section 510 of this title." Section 510(c)(1) provides that "after notice and a hearing, the court may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." As stated in *In re Rago:*

> Where, despite adequate notice or knowledge of the bankruptcy, a priority creditor fails to file a timely proof of claim, it may be equitable to subordinate the creditor's claim to claims that were timely filed. Since general considerations of fairness will support subordination even without inequitable conduct on the part of the creditor, an unexcused delay by the creditor in filing a proof claim certainly provides a basis to subordinate. Moreover, based on general considerations of fairness, it may be equitable to subordinate a late filed priority claim even where the creditor lacked adequate notice or knowledge, if a distribution has already taken place and an undoing of the distribution would be excessively burdensome. In either situation, the notice and hearing provision of Section 510(c) will assure that the priority creditor can present the arguments against subordination to the court.

*Id.* at 890.

■ The court believes that the reasoning in *In re Rago* fairly and appropriately balances the interests of all parties in these types of cases. Particularly when a priority claim is filed after disbursement of an estate, courts should carefully weigh the benefits and burdens of all parties to reach a just and equitable result. *In re Vecchio*, at 560.

## CONCLUSION

For the forgoing reasons, the decision of the bankruptcy court ruling that § 11 U.S.C. 502(b)(1) disallows a claim not filed pursuant to Rule 3002(c) is reversed. We remand this case to the bankruptcy court to consider whether the Department's late filed claim should be subordinated under the principles of equitable subordination.

## SUPPLEMENTAL MEMORANDUM, OPINION AND ORDER

Thomas E. Raleigh, Chapter 7 Bankruptcy Trustee (the "Trustee") in the Estate of William J. Stoecker (the "Debtor") has moved for a rehearing of this Court's August 30, 1994 Memorandum, Opinion and Order (the "Opinion") pursuant to Fed.R.Bank.P. 8015. Additionally, the Trustee moves this court for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In the Opinion, this court reversed the Bankruptcy Court's decision which had disallowed a priority tax claim asserted by the State of Illinois Department of Revenue (the "Department") against the Debtor because the proof of claim was untimely filed. The Opinion remanded the case to the Bankruptcy Court to determine whether the Department's tardily filed claim should be equitably subordinated.

In its current motion, the Trustee correctly points out that the Opinion failed to address the second issue presented in the appeal, namely, the Bankruptcy Court's substantive disallowance of the claim on the merits. Specifically, the Bankruptcy Court disallowed the claim because the Department had failed to establish that the Debtor, as a responsible officer of the non-debtor corporation, Chandler Enterprises, Inc. ("Chandler"), had wilfully failed to pay the use tax assessed against Chandler.

For the following reasons, this court grants the motion for rehearing to review whether the claim should have been disallowed on the merits, reverses the Bankruptcy Court's decision to disallow the claim, remands the matter for a new hearing and/or

evaluation of the evidence, and denies the motion for certification.

### STANDARD OF REVIEW

Federal Rule of Bankruptcy 8015, which governs motions for rehearing, is silent as to the appropriate standards for granting such relief. However, because Fed.R.Bank.P. 8015 was derived from Fed.R.App.P. 40, it is appropriate to look to the appellate rule for guidance. 9 Collier on Bankruptcy 8015.04 at 6015–4 (15th ed. 1993). Federal Rule of Appellate Procedure 40 provides in part, "[t]he petition must state with particularity the points of law of fact which in the opinion of the petitioner the court has overlooked or misapprehended...." Accordingly, this motion for rehearing is properly before this court.

### DISCUSSION

■■■■ When deciding an appeal from a bankruptcy court, a district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Evanston Motor Co.,* 735 F.2d 1029, 1031 (7th Cir.1984); *In re Robinson,* 169 B.R. 171, 174 (N.D.Ill.1994). But "where there are pure questions of law or mixed questions of law and fact, the District Court may conduct a de novo review." *In re Mader,* 108 B.R. 643, 644 (N.D.Ill.1989). Because the decision below involved mixed law and fact questions, we conduct de novo review.

The Department's claim against Chandler is based on a use tax assessed under section 3 of the Use Tax Act, Ill.Rev.Stat., ch. 120, para. 439.3 (codified as 35 ILCS 105/3). Section 12 of the Use Tax Act, Ill.Rev.Stat., ch. 120, par. 439.12 (codified as 35 ILCS 105/12), in turn, incorporates by reference section 13½ of the Retailer's Occupation Tax Act ("ROTA"), Ill.Rev.Stat., ch. 120, par. 452½ (1991) (codified as 35 ILCS 120/13.5 (West 1992)). Section 13½ of the ROTA provides that a responsible individual may be liable for taxes under certain circumstances when a corporate taxpayer fails to pay the taxes to the Department. Accordingly, the Department brought the instant claim against the Debtor because Chandler did not pay the assessed use tax. The Department argued

that the Debtor was liable for the amount of the tax based on the Debtor's status as a "responsible officer" who wilfully failed to pay the use tax which had been assessed against Chandler pursuant to the Use Tax Act.

Section 13½ of the ROTA provides, in part, as follows:

> Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed ... and who wilfully fails to file such return or to make such payment to the Department or wilfully attempts in any other manner to evade or defeat the tax shall be personally liable for a penalty equal to the total amount of tax unpaid by the corporation, including interest and penalties thereon....

35 ILCS 120/13.5. Thus, the statutory language is unambiguous and clearly states that a person responsible for withholding and paying over taxes who wilfully fails to do so is liable for a penalty equal to the total amount of the unpaid taxes.

Section 13½ of the ROTA also sets forth the method by which the Department establishes the liability against a person who it believes to be a "responsible officer" of a corporation and the method by which the Department proves the liability at a hearing. Section 13½ further provides:

> The Department shall determine a penalty due under this Section according to its best judgment and information, and such determination shall be prima facie correct and shall be prima facie evidence of a penalty due under this Section. Proof of such determination by the Department shall be made at any hearing before it or in any legal proceeding by reproduced copy of the Department's record relating thereto in the name of the Department under the certificate of the Director of Revenue. Such reproduced copy shall, without further proof, be admitted into evidence before the Department or any legal proceeding and shall be prima facie proof of the correctness of the penalty due, as shown thereon. The Department shall in every

case issue a notice of penalty liability for the amount claimed by the Department pursuant to this Section. Procedures for protest and review of a notice of penalty liability issued pursuant to this Section and assessment of the penalty due hereunder shall be the same as those prescribed for protest and review of a notice of tax liability and the assessment of tax liability under this Act as set forth in Sections 5 and 12 of this Act [35 ILCS 120/5 and 35 ILCS 120/12].

35 ILCS 120/13.5.

On August 15, 1991, the Department issued its Notice of Penalty Liability ("NPL") against the Debtor for the outstanding use taxes which it had previously assessed against Chandler by issuance of its NPL against Chandler on September 9, 1990. The liability established by the issuance of the NPL was the basis of the claim against the Debtor.

In the bankruptcy proceeding, the Trustee asserted that Chandler was not liable for the use tax on its purchase of the aircraft and, therefore, the Debtor could have no liability as a "responsible officer" of Chandler. The Trustee claimed that Chandler's purchase of the aircraft from Prewitt Leasing was an "occasional sale" exempt from use tax because Prewitt Leasing was not a "retailer." In its reply, the Department took the position that the Bankruptcy Court lacked jurisdiction to decide the tax liability of Chandler as a non-debtor whose liability had already been determined under state law. In addition, the Department denied that the sale was exempt from use tax.

At trial, the Department submitted into evidence, under certificate of the Director of the Department of Revenue, the NPL issued against the Debtor. In support of its position that the purchase of the aircraft was an occasional sale exempt from use tax and that the Debtor had no liability as a responsible officer of Chandler, the Trustee presented the testimony of John Anderson. Mr. Anderson was the attorney who had represented Chandler with respect to the purchase of the aircraft. He testified that he had issued an opinion letter to the financing company concluding that, under Illinois law,

there was no sale or use tax properly assessable or payable as a result of the purchase of the aircraft by Chandler or the lease of the aircraft by Chandler to Grabill. This opinion was supported by the Vice–President of Prewitt Leasing, Inc. who signed a "Certificate Re Occasional Seller Exemption from Illinois Sales and Use Tax" on September 30, 1988. However, he testified that he never issued such an opinion letter to Chandler or any of its officers.

As a preliminary matter, the Bankruptcy Court properly found that it had jurisdiction to determine the tax liability of a non-debtor entity such as Chandler pursuant to the plain language of 11 U.S.C. § 505(a)(1). *In re Stoecker*, 151 B.R. 989, 998–99 (Bankr. N.D.Ill.1992). Pursuant to 11 U.S.C. § 505(a)(1), the court is authorized to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). In addition, the Bankruptcy Court relied on several decisions which held that a bankruptcy court may apply section 505(a) to determine the tax liability of parties other than the debtor. *In re Stoecker*, 151 B.R. at 998–99 (citing *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991); *In re Goldblatt Bros.*, 106 B.R. 522 (N.D.Ill.1989); *In re Major Dynamics, Inc.*, 14 B.R. 969 (S.D.Cal.1981)). On remand, if the Bankruptcy Court finds that the Debtor wilfully failed to pay the use tax assessed against Chandler, the Court must also make the finding that Chandler owed the assessed tax.

The Bankruptcy Court then found that, as president and sole director of Chandler, the Debtor was in control of Chandler. *Stoecker*, 151 B.R. at 1000. Next, the court found that the Department had established a prima facie case by introducing a copy of the NPL issued against the Debtor but that, based on the testimony of Trustee's witness, John Anderson, the burden had shifted back to the Department. The court went on to hold "that the Department ha[d] failed to meet its burden and establish that the Debtor wilfully

failed to pay the tax assessed against Chandler for the sale of the aircraft." *Id.* at 1000.

Based principally on the decisions in *Department of Revenue v. Heartland Invest., Inc.,* 106 Ill.2d 19, 86 Ill.Dec. 912, 476 N.E.2d 413 (1985) and *Department of Revenue v. Corrosion Systems, Inc.,* 185 Ill.App.3d 580, 133 Ill.Dec. 647, 541 N.E.2d 858 (4th Dist. 1989), the Bankruptcy Court held that in order to establish the element of wilfulness, the Department was required to show a voluntary, conscious, intentional or reckless failure of the Debtor to pay the tax. The court found that the Department had introduced no evidence to support a finding of wilfulness under this standard and, therefore, disallowed the claim on the merits. *Stoecker,* 151 B.R. at 1000.

In its motion to reconsider, the Department argued that it had established its prima facie case of liability against the Debtor by introducing the NPL into evidence and that the burden was thereafter shifted to the Trustee to show a lack of wilfulness. The Bankruptcy Court rejected this argument stating:

> Contrary to the Department's arguments, the Department had the burden of proof to show the Debtor's failure to pay the subject claim was willful, rather than the Trustee, as the objector, having the burden to show that the Debtor's failure to pay was not willful. No evidence was adduced by the Department to show that the Debtor's failure to pay the claimed tax was a voluntary, conscious and intentional failure. . . .

*Stoecker,* 151 B.R. at 1006.

■ Before this court, the Department argues that it established its prima facie case of the Debtor's liability under section 13½ by submitting the NPL sent to the Debtor. Further the Department argues that the Debtor has failed to rebut the presumption of his liability arising from the Department's prima facie case because the Debtor failed to submit any evidence to the contrary. The Trustee contends that, even if this court finds the NPL deserves a presumption of wilfulness, he introduced uncontroverted evidence that the Debtor's failure to pay the alleged tax was not wilful due to the opinion of outside counsel that the transaction was not subject to the use tax.

Two reported Illinois Appellate Court opinions interpret section 13½ of the ROTA in relation to the evidentiary effect of an NPL issued by the Department.[1] The two cases reach contrary conclusions. The Illinois Supreme Court has not decided this issue.

The Trustee urges this court to follow the recent decision in *Griffith v. Department of Revenue,* 266 Ill.App.3d 838, 203 Ill.Dec. 889, 640 N.E.2d 1262 (1st Dist.1994) delivered by Justice Buckley while the Department urges the court to follow the decision in *Branson v. Department of Revenue,* 268 Ill.App.3d 818, 206 Ill.Dec. 140, 644 N.E.2d 1193 (4th Dist. 1994) delivered by Justice Steigmann. Both of these cases were decided after the Bankruptcy Court's decision.

In *Griffith,* the Appellate Court interpreted section 13½ of the ROTA as stating that an NPL is prima facie evidence only of the *amount* due and not of the *wilfulness* of a responsible officer. *Griffith,* 203 Ill.Dec. at 892, 640 N.E.2d at 1265 (emphasis added). Therefore, the court declared that the Department bears the burden of introducing additional evidence to prove wilfulness. The court explicitly rejected the Department's argument that a "prima facie case is met simply by admitting into evidence the reproduced copy of [its] records, i.e., the NPL and Corporate Tax Returns." *Id.* Instead, the court reasoned that the language of the statute reads that the Department's records shall only be prima facie evidence of a penalty due and prima facie proof of the correctness of the penalty. The court refused to equate the meaning of "prima facie case" with the phrases "prima facie evidence of a penalty due" and "prima facie proof of the

---

1. On January 1, 1994, section 13½ was replaced by section 3–7 of the Uniform Penalty and Interest Act. (Ill.Rev.Stat. ch., 120, sec. 2603–7) (now codified as 35 ILCS 735/3–7 (West 1992)). Section 13½ stated the NPL "shall be prima facie proof of the correctness of the penalty due." Section 3–7 now states the NPL "shall be prima facie proof of the correctness for the amount of penalty due."

correctness of the penalty due." *Id.* The court concluded that the meanings of these phrases are not the same and that:

[t]o hold otherwise would require this court to assume that a person acted wilfully every time the Department's records showed a corporate tax liability. This reading would in effect merge the element of wilfulness into the element of corporate liability and would render the wilful language [of the statute] superfluous or meaningless.

*Id.*

We respectfully disagree with the *Griffith* decision and find Justice Steigmann's reasoning in the *Branson* decision to be more persuasive. In *Branson,* the Appellate Court determined that section 13½ of the ROTA does not limit the prima facie proof to the *amount* of the penalty only. *Branson,* 206 Ill.Dec. at 144, 644 N.E.2d at 1197. The court stated that "the statute provides the introduction of [the NPL] establishes prima facie proof of the correctness of its assessment of a penalty against a taxpayer and, without more, *establishes all the elements necessary for the imposition of a penalty against an individual."* *Id.,* 206 Ill.Dec. at 143, 644 N.E.2d at 1196 (emphasis added). The court reached this conclusion by analyzing other sections of the ROTA as well as an analogous federal statute.

For example, section 4 of the ROTA, which deals with departmental determinations of the amount of tax due in examining and correcting returns, provides that "Such certified reproduced copy . . . shall be prima facie proof of the correctness of the *amount* of tax due, as shown therein." 35 ILCS 120/4 (emphasis added). Therefore, section 4 indicates that the legislature clearly knew how to limit prima facie determinations to amounts only, in contrast to the existence of the penalty itself.

Additionally, the *Branson* court noted that its interpretation of section 13½ of the ROTA agrees with interpretations of similar federal tax statutes. In interpreting the meaning of section 13½ of the ROTA, it is appropriate to consider the interpretation given section 6672 of the Internal Revenue Code. *Department of Revenue v. Joseph Bublick & Sons,* 68 Ill.2d 568, 12 Ill.Dec. 265, 369 N.E.2d 1279 (1977). Section 6672(a) of the Internal Revenue Code of 1986 provides that a person responsible for withholding and paying over taxes who wilfully fails to do so is liable for a penalty equal to the total amount of the unpaid taxes. 26 U.S.C.A. § 6672(a) (1989).

In *Brounstein v. United States,* 979 F.2d 952, 954 (3d Cir.1992), the court held that an assessment against a responsible person is equivalent to the assessment of a tax and carries with it a rebuttable presumption that it is correct. Significantly, the court further held that "the IRS's introduction of certified copies of the assessment [at the trial level] shifted to [the taxpayer] the burden of going forward with evidence to show that the assessment against him under 6672 was incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not wilfully fail to pay the amount due to the IRS." *Brounstein,* 979 F.2d at 954; *see also United States v. Schroeder,* 900 F.2d 1144 (7th Cir.1990); *Psaty v. United States,* 442 F.2d 1154 (3d Cir.1971).

We agree with the *Branson* court's decision which specifically rejected the *Griffith* decision and reasoned that:

The language of section 13½ of the [ROTA] would be senseless without construing it to mean that the Department's determination was prima facie proof of all elements of the penalty. The Department can assess no penalty without finding wilfulness. Thus, in the absence of wilfulness on the part of the responsible individual, the correct amount of any penalty is $0. Accordingly, we hold that the Department's determination of a penalty due against a responsible individual establishes a prima facie case regarding all the statutory elements required for imposition of such a penalty.

*Branson,* 206 Ill.Dec. at 144, 644 N.E.2d at 1197.

Finally, we are persuaded by the *Branson* court's opinion that it is reasonable to shift the burden to the taxpayer in tax cases. As *Branson* noted, a taxpayer has better access to his or her records and witnesses to rebut the Department's claim of wilfulness.

Accordingly, we find that the Department's determination of a penalty due against a responsible individual establishes a prima facie case regarding all the statutory elements required for imposition of such a penalty.

The Bankruptcy Court's ruling requires this court to remand the action so that the Bankruptcy Court may properly determine whether the Debtor wilfully failed to pay the taxes as assessed against Chandler. The NPL shall be considered prima facie proof of the Debtor's wilfulness which the Trustee will have the burden to rebut. The Bankruptcy Court may wish to re-open the proof so that both parties can introduce evidence in the light of this Supplemental Opinion. After hearing all the evidence offered by the parties, the Bankruptcy Court should determine whether the Trustee successfully proved that the Debtor's inaction was not wilful.

The Trustee also moves this court for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Trustee argues that certification is warranted because this court's August 30, 1994 Memorandum, Opinion and Order as well as this Supplemental Memorandum, Opinion and Order involve controlling questions of law as to which there is substantial ground for difference of opinion.

▪ As a general proposition, "permission to take an interlocutory appeal should be granted sparingly and with discrimination." *In re Brand Name Prescription Drugs Antitrust Litigation,* 1995 WL 9216, No. 94 C 897 (N.D.Ill. Jan. 9, 1995) (*quoting In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 738 (N.D.Ill.1977)). When deciding a motion for certification, the district court must consider the following factors: (1) whether the motion to be appealed involves a controlling question of law; (2) whether there is a substantial ground for difference of opinion on that question of law; and (3) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Segni v. Commercial Office Spain,* 650 F.Supp. 1045, 1046 (N.D.Ill.1987). Although the two issues on appeal in this court involve controlling questions of law on which opinions reasonably differ, we find that an appeal at this time will not materially advance the ultimate termination of this litigation. The ultimate termination of this litigation will be best advanced if the Bankruptcy Court re-decides the issues in the light of this court's Opinions. The parties then can contemplate an appeal. This court will expeditiously decide any appeal made to it so that the parties may swiftly move on to the Circuit Court of Appeals if either one of them wishes to submit these thorny issues to it.

### CONCLUSION

We, therefore, reverse the Bankruptcy Court's decision to disallow the claim on the merits and remand this action to the Bankruptcy Court to determine whether the Debtor was a responsible officer who "wilfully" failed to pay the assessed tax. If the Bankruptcy Court allows the claim, then it must determine whether the claim should be equitably subordinated in accordance with this court's August 30, 1994 Memorandum, Opinion and Order. After these decisions are made, the matter will be ripe for appeal. Accordingly, we deny the motion of the Trustee to certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

It is so ordered.