STEPHEN L. DENTON, Plaintiff-Appellant, v. CIVIL SERVICE COMMIS-
SION OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

Fourth District    No. 4—95—0196

Argued October 18, 1995.—Opinion filed February 8, 1996.

Mary Lee Leahy (argued), and Cheryl Redfield Jansen, both of Leahy Law Offices, of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General (argued), of counsel), for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, a veteran, appeals the circuit court decision to affirm the Civil Service Commission (Commission). The sole issue raised on appeal is whether section 8b.7(f) of the Personnel Code (Code) (20

ILCS 415/8b.7(f) (West 1992)) gives veterans an absolute preference over nonveterans of the same job grade. We find the statute does grant veterans an absolute preference and reverse.

## I. BACKGROUND

Stephen L. Denton is an honorably discharged veteran of the United States Army. On June 12, 1991, he applied for an executive IV position with the Illinois Department of Central Management Services (CMS). CMS gave him a grade of "A" for the position, the highest grade possible. It also placed his name, with the "A" grade, on an eligibility list requested by the State Police. A non-veteran with a grade of "A," and who was judged to have qualifications superior to all other applicants, was hired.

Plaintiff believed the decision to hire a nonveteran instead of him when he was qualified for the position violated his rights. He wrote to the Commission in November 1991, alleging a violation of "Personnel Rules, 80 Illinois Administrative Code, Chapter 1, Section 302.30 c) 3)." This rule states "[i]f category ratings are used, the veteran eligible in each category shall be preferred for appointment before the non-veteran eligible in the same category." (80 Ill. Adm. Code § 302.30(c)(3), at 99 (1992-93), amended at 19 Ill. Reg. 8145, eff. June 7, 1995 (identical language now at 80 Ill. Adm. Code § 302.30(d) (1995)).) It is part of a program designed to satisfy section 8b.7 of the Code. 20 ILCS 415/8b.7 (West 1992).

On April 17, the Commission staff sent Denton a letter stating in part:

> "Rule 302.30 c) 3) has been interpreted to permit an agency to bypass a veteran only when the qualifications of the nonveteran eligible are superior to the bypassed veteran eligible. We conclude that this is the case herein.
>
> Having found no violation of the Personnel Code or Rules, it is the intention of the staff to recommend to the Commission at its meeting on May 13, 1992[,] that your appeal be denied. *** If adopted by the Commission, this will become a final administrative decision."

On May 8, Denton replied, stating his letter was to "serve as my response to your April 17, 1992[,] letter regarding my appeal and complaint of violation of the Personnel Code, Chapter 127 63b108b.7. of the Illinois Rev. Statutes." The statute Denton refers to is now section 8b.7 of the Code. (See Ill. Rev. Stat. 1991, ch. 127, par. 63b108b.7.) On May 14, 1992, the Commission adopted its staff's findings.

Denton then filed a complaint for administrative review in the circuit court of Sangamon County on June 17, 1992. On February 9, 1995, the circuit court, in what it observed to be a case of first impres-

sion in Illinois, concluded the preference granted by "Section 1 of the Veterans Preference Act (Ill. Rev. Stat. 1991, ch. 126¹/₂, par. 23; 330 ILCS 55/1 [(West 1992)])" was not mandatory. This appeal followed.

## II. ANALYSIS

■ Section 8b.7(f) of the Code reads as follows:

> "(f) The rank order of persons entitled to a preference on eligible lists shall be determined on the basis of their augmented ratings. When the Director establishes eligible lists on the basis of category ratings such as 'superior', 'excellent', 'well-qualified', and 'qualified', *the veteran eligibles in each such category shall be preferred for appointment before the non-veteran eligibles in the same category.*" (Emphasis added.) (20 ILCS 415/8b.7(f) (West 1992).)

At issue here is the emphasized portion of the section, which applies in cases where the Director has established lists on the basis of category ratings. Denton argues it provides an absolute preference for veterans within each section; the State agencies (State Police, CMS, and the Commission) argue it does not provide an absolute preference, and the system currently in place satisfies its mandates.

### A. *CMS Procedures*

CMS has not recorded its section 8b.7-related procedures in the Illinois Administrative Code. We note these procedures appear to implement a policy of the agency which affects the rights and procedures available to people and entities outside the agency, *i.e.*, "rules" within the meaning of section 1—70 of the Illinois Administrative Procedure Act (Act) (5 ILCS 100/1—70 (West 1992)). In *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 181, 470 N.E.2d 1029, 1035, our supreme court determined where an agency had not followed the proper procedure under the Act for the adoption of rules, the rule was invalid. Moreover, section 5—10(c) of the Act expressly provides:

> "No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act. No agency, however, shall assert the invalidity of a rule that it has adopted under this Act when an opposing party has relied upon the rule." 5 ILCS 100/5—10(c) (West 1992).

However, part of the record on appeal is a set of excerpts from something called the "Transactions Manual." From that material, along with the remainder of the record and counsel's clarifications at oral argument, we have the following understanding of the hiring process. Persons submit applications to CMS, stating the general

type of position they are interested in (*e.g.*, executive IV, secretary II, *et cetera*). Tests are available for some positions. CMS grades applicants for the position based on the results of the test (if any) and the applicant's résumé. It appears the grading system is now restricted to grades of "A," "B," or "C" with respect to the executive IV position for which Denton applied. Once an applicant has been graded, he or she is sent a "Notice of Grade," which informs him or her of the grade he or she has received and also informs the applicant if his or her name has yet been placed on any lists sent out to agencies.

A list of applicants, ranked by the grades CMS has assigned, is generated by CMS and sent to a State agency when requested. Upon receipt of the CMS list, the agency proceeds to contact and interview applicants in the highest grade category. It may dip into the next-highest category if there are fewer than three applicants in the highest. Veterans must be "interviewed and considered" before nonveterans of the same category. If veterans and nonveterans of the same category are interviewed on the same day, veterans must be interviewed at an earlier time. Only after all veterans have been interviewed and considered may the agency "elect to expand its search" and interview and consider nonveterans of the same grade. If the agency wishes to hire a nonveteran over a veteran of the same grade, it must first obtain approval from CMS, informing it of the reasons for the decision.

### B. *Interpreting Section 8b.7(f) of the Code*

Review of final administrative decisions is governed by section 3—110 of the Code of Civil Procedure (735 ILCS 5/3—110 (West 1992)), which provides in part in an action for review, "[t]he hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court." The circuit court apparently based its decision upon the wrong statute. However, rather than remand to correct this error we elect to decide the case on its merits. Neither side has objected to our review and both have fully briefed the issue. Our role is to review the administrative decision, not the circuit court decision (see *Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885). In a case involving the legal effect of undisputed facts, the issue is a matter of law, and the standard of review is *de novo* (*Fitzpatrick v. Human Rights Comm'n* (1994), 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491).

■ The primary rule in statutory construction is to give effect to legislative intent. (*Solich v. George & Anna Portes Cancer Prevention*

*Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822.) The primary source of this meaning is the language of the statute. (*Solich,* 158 Ill. 2d at 81, 630 N.E.2d at 822.) Words in the statute should be given their popularly understood meaning. (*International Bureau of Fraud Control, Ltd. v. Clayton* (1989), 188 Ill. App. 3d 703, 710, 544 N.E.2d 416, 421, citing *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 215, 447 N.E.2d 394, 396.) Where the statutory language is unclear we may look beyond it, but where it is clear we must give it effect. *Solich,* 158 Ill. 2d at 81, 630 N.E.2d at 822.

Generally, courts give a great deal of deference to an agency's interpretation of a statute which it is charged with administering. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222; *Branson v. Department of Revenue* (1994), 268 Ill. App. 3d 818, 823, 644 N.E.2d 1193, 1196; *Fitzpatrick,* 267 Ill. App. 3d at 390, 642 N.E.2d at 490.) However, an agency's interpretation is not binding and will be rejected if erroneous. *City of Decatur,* 122 Ill. 2d at 361, 522 N.E.2d at 1222; *Branson,* 268 Ill. App. 3d at 823, 644 N.E.2d at 1196; *Fitzpatrick,* 267 Ill. App. 3d at 390, 642 N.E.2d at 490.

It is far from clear whether a "preference" consisting solely of being interviewed first gives veterans *any* advantage in the hiring process. CMS procedures contemplate interviews of veterans and nonveterans on the same day. The appellees' brief contained the following language: "Denton's argument also assumes that he and [the nonveteran who was given the position] remained on equal footing in terms of assessments of their qualifications after the State Police conducted interviews; yet, this does not follow." If the State Police *compare* veterans and nonveterans *after* interviewing them, as the quoted language implies, we fail to see how Denton's "preference" helped him at all.

Section 8b.7(f) of the Code does not accord veterans a preference for *interviews.* Rather, it says when job grades are used, veterans "shall be preferred for *appointment.*" (Emphasis added.) (20 ILCS 415/8b.7(f) (West 1992).) As observed above, *priority* in *interviewing* does not translate into a *preference* in *appointment.* As the latter is the statutory mandate, the current procedures are inadequate.

"Preferred" means "[p]ossessing or accorded a priority, advantage, or privilege." (Black's Law Dictionary 1178 (6th ed. 1990).) As noted, section 8b.7(f) of the Code mandates when lists are based on ratings, veterans "shall" be "preferred" for "appointment" within categories. (20 ILCS 415/8b.7(f) (West 1992).) Giving the words their commonly understood meaning (*International Bureau of Fraud*

*Control*, 188 Ill. App. 3d at 710, 544 N.E.2d at 421), the logical meaning of such language is an absolute preference. When the Director of CMS chooses to organize eligibility lists on the basis of category ratings, veterans must be offered the job before nonveterans within each category.

We need not pass on the wisdom of such a rule—our role is to determine the legislature's intent, not to second-guess its decisions. (*Solich*, 158 Ill. 2d at 81-83, 630 N.E.2d at 822-23.) An absolute preference for veterans in public employment is constitutionally permissible. (*Personnel Administrator of Massachusetts v. Feeney* (1979), 442 U.S. 256, 280-81, 60 L. Ed. 2d 870, 888-89, 99 S. Ct. 2282, 2297.) Defendants contend such a construction would result in an "absurd" guarantee of State employment to veterans. We disagree.

An absolute preference is not a "guarantee" of State employment unless CMS categories are overbroad. Section 8b.7(f) of the Code clearly is intended to do something other than add "points" when the lists are grouped according to category ratings. Sections 8b.7(c), (d), (e) and (f) of the Code all deal with adding points to veterans' scores when eligible lists are computed with a specific rank order, but section 8b.7(f) grants veterans a different type of preference when the list is based on category ratings. (20 ILCS 415/8b.7(c), (d), (e), (f) (West 1992).) An absolute preference for veterans within a given category rating does *not* translate to a "guarantee" of State employment. Nor is it inconsistent with a system "based on merit principles and scientific methods." 20 ILCS 415/2 (West 1992).

Defendants' argument regarding the consequences of an absolute preference suggests it is undesirable for a veteran to receive a job instead of an objectively better qualified nonveteran. Our legislature did not find this result totally unpalatable, as evidenced by its decision to enact a veterans' preference statute. Veterans' preference statutes are designed, at least in part, to reward veterans for their service and sacrifice to this nation. (See *Feeney*, 442 U.S. at 265, 60 L. Ed. 2d at 879, 99 S. Ct. at 2289.) Certainly it is possible for a veteran to receive an appointment instead of a nonveteran who is in some sense better qualified when they are granted a preference—this is the point of a preference. The statute was designed to give veterans an advantage over other applicants.

This result was *intended* to occur when the lists CMS sends out are based on pure numerical ratings instead of categories. When this system is used, the lists are in numerical order—like a class being graded on a scale of 100 to 50, as opposed to "A" through "F." In the numerical system, veterans receive a preference by having points added to their ratings. (See 20 ILCS 415/8b.7(c), (d), (e), (f) (West

1992).) The lists sent out are ranked according to the augmented ratings. (20 ILCS 415/8b.7(f) (West 1992).) The only rational purpose of adding points to veterans' ratings is to advance them past others who would be before them in line for the job were it not for these statutory provisions.

Assuming *arguendo* it were undesirable for a veteran to receive an appointment before a much better qualified nonveteran, there are a number of ways CMS could prevent such a result, or lessen its likelihood.

First, CMS has the power to make ratings broad or narrow. Section 8b.7(f) of the Code suggests ratings of " 'superior', 'excellent', 'well-qualified', and 'qualified'." (20 ILCS 415/8b.7(f) (West 1992).) In this case CMS instead chose ratings of "A," "B," and "C." There will be more people in each category the fewer categories are created. The fewer categories (and thus the more persons within each), the greater the effect of the absolute preference, since it acts within each category. If CMS has too few ratings, it will be possible for a veteran to receive a job instead of a nonveteran who is objectively much better qualified. But if this happens, it is because of the rating system adopted by CMS. It could be averted by simply increasing the number of ratings, to ensure only the best qualified candidates (veterans or no) receive the highest ratings.

CMS also has the power to change the way it grades individuals for positions. It is not entirely clear from the record before this court how CMS currently decides whether individuals merit an "A," "B," or "C" grade. It appears to be based on the extent to which they satisfy the general requirements for the type of position (*e.g.*, executive IV) for which they have applied. CMS could instead base the ratings for each list on qualifications submitted by the agency for which CMS is preparing the list. At oral argument none of the parties were aware of any prohibition against agencies specifying specific criteria to be considered by CMS in grading candidates, nor has our independent research unearthed any bar to such a procedure. Especially if coupled with an increase in the number of ratings, or grades, this would further ensure only those best qualified for the actual position in question (*i.e.*, best qualified to be Assistant Bureau Chief for the Drug Abuse Resistance Education (D.A.R.E.) program, as opposed to best qualified to be an "Executive IV") were in the top category on the list sent to the agency. CMS already performs this type of evaluation on a more limited basis when called upon to approve an agency's decision to hire a nonveteran instead of a veteran in the same category. Unless such approval is a mere "rubber stamp," which we will not presume, CMS must have the capacity to evaluate an applicant's qualifications for a specific position.

Further, CMS need not use categories at all: it may submit lists according to numerical ratings—so long as it grants veterans their due (see 20 ILCS 415/8b.7(c), (d), (e), (f) (West 1992)) under such a system.

CMS need not choose any of these alternatives and other changes may be warranted. All we hold today is section 8b.7(f) of the Code grants veterans an absolute preference over nonveterans within each grade category when eligible lists sent out by CMS are arranged by categories and not by numerical rankings.

## III. CONCLUSION

Denton was a veteran within the same grade category as the non-veteran who was hired. Not offering him the position violated the rights the Illinois legislature conferred upon him by section 8b.7(f) of the Code. We remand for further proceedings consistent with this opinion.

Reversed and remanded.

STEIGMANN and GARMAN, JJ., concur.