COLOR COMMUNICATIONS, INC., Petitioner, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fourth District    No. 4—96—0657

Argued March 19, 1997.—Opinion filed May 28, 1997.

James I. Rubin and Kevin J. O'Brien (argued), both of Butler, Rubin, Saltarelli & Boyd, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Erik G. Light (argued), Assistant Attorney General, of counsel), for respondents.

Katherine D. Hodge, of Hodge & Dwyer, and Whitney Wagner Rosen, of Illinois Environmental Regulatory Group, both of Springfield, for *amicus curiae.*

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Petitioner, Color Communications, Inc. (CCI), appeals from an order of respondent Illinois Pollution Control Board (Board), which affirmed an administrative decision by respondent Illinois Environmental Protection Agency (Agency), denying separate "Clean Air Act Permit Program" (CAAPP) permits for CCI's two Chicago plants.

*Color Communications, Inc. v. Illinois Environmental Protection Agency*, Ill. Pollution Control Bd. Op. 96—125, at 17 (July 18, 1996). CCI contends that the Board erred by determining that CCI's two Chicago plants constituted a single source for the purposes of the CAAPP. We agree and reverse and remand.

## I. BACKGROUND

CCI produces color systems, samples, color boards, and color marketing systems for paint, automotive, and other industries. It has manufacturing facilities in Chicago and other domestic and foreign locations. Its two Chicago facilities are located at 4000 West Fillmore Street (hereafter the 4000 plant) and 4242 West Fillmore Street (hereafter the 4242 plant). These two facilities are separated by more than a full city block. Another company, Ribbon Webbing Corporation (Ribbon), which is wholly unconnected to CCI, owns a manufacturing plant and offices in the city block between CCI's two plants.

The 4242 plant houses color-mixing operations and paint-coating lines and produces coated substrates, including paper and plastic. This plant sends color bases and colorants it produces to other CCI facilities, including the 4000 plant and plants in New York and New Zealand. The 4000 plant houses printing and assembly operations and warehousing and shipping functions. More than half of the printing and assembly of color boards at the 4000 plant involves the use of coated substrates provided by the 4242 plant. However, many of the 4000 plant's printing activities involve materials obtained from customers and third-party vendors, not materials produced at the 4242 plant.

Because the two plants perform different operations and use different raw materials, their pollutant-emitting activities are classified differently under the Standard Industrial Classification (SIC) Manual. The first two digits of the code designate the major industrial grouping to which each plant belongs. The 4000 plant's pollutant-emitting activities are classified as group 2759 (27 is the SIC code for "commercial printing not elsewhere classified"). The activities at the 4242 plant are classified as group 2672 (26 is the SIC code for "paper coating not elsewhere classified"). The CCI plants have had these SIC classifications for at least five years. The Agency does not question the appropriateness of the different SIC codes assigned to the two plants.

The 1990 amendments to the federal Clean Air Act (CAA) (42 U.S.C. § 7401 *et seq.* (1988)) required states to establish permitting programs for air pollution sources. Clean Air Act Amendments of 1990, Pub. L. No. 101—549, 104 Stat. 2399, 2404 (1990). The CAAPP

(see 415 ILCS 5/39.5 (West 1994)) establishes permitting requirements for certain sources of air pollutants regulated pursuant to the CAA. The Agency administers the CAAPP. CCI's Chicago plants are subject to the CAAPP because they are located in a severe nonattainment area and each has the potential to emit 25 or more tons per year of volatile organic material. See 415 ILCS 5/39.5(2)(a), (2)(c)(iii)(A) (West 1994). The 4242 plant emits more than 25 tons per year of volatile organic material, and the 4000 plant emits approximately 10 tons per year of volatile organic material.

The Agency issued an air operating permit to the 4242 plant in 1979 and renewed the permit in 1983, 1988, and 1994. In 1989, CCI acquired the 4000 plant (from a company with which CCI was not associated in any way), and in 1994, the Agency issued an air operating permit for that plant. In 1995, the Agency issued a joint construction and operating permit for certain additional emission units at the 4000 plant. Each of these permits treated the two plants as separate, independent facilities.

In September 1995, CCI submitted separate CAAPP applications to the Agency for CCI's two Chicago plants. In November 1995, the Agency issued a "Notice of Incompleteness"—a form of permit denial—advising CCI that the two plants must be considered one "source" for purposes of CAAPP permits. The notice stated:

"The Agency has previously learned that operations at both of CCI's locations include pollutant[-]emitting activities that belong to the same industrial grouping, are located on one or more contiguous or adjacent properties[,] and are under common control. Because the locations together constitute a single CAAPP source, CCI cannot seek recognition for each of its locations of operation as a separate CAAPP source."

The Agency then informed CCI that it must submit only one CAAPP application that treated both plants as a single "source."

CCI appealed the Agency's decision to the Board, arguing that the two plants constituted separate, independent sources pursuant to the CAAPP. In July 1996, the Board affirmed the Agency's decision (with two Board members dissenting), agreeing that the two plants constituted the same "source" under the CAAPP.

## II. ANALYSIS

CCI appeals, arguing that the Board's decision conflicts with applicable state and federal statutes and regulations. Specifically, CCI contends that the Board erred by concluding that the two plants constitute a single source when statutes and regulations require separate permits for sources of emissions that (1) did not belong to the same industrial grouping because they are classified by different SIC

codes, and (2) are located on properties that are neither contiguous nor adjacent.

## A. Standard of Review

■ Section 3—110 of the Code of Civil Procedure (735 ILCS 5/3—110 (West 1994)) governs review of final administrative decisions, providing in part that, in an action for review, "[t]he hearing and determination shall extend to all questions of law and fact presented by the entire record before the court." In a case involving the legal effect of undisputed facts, as here, the issue is a matter of law, and we review it *de novo*. *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 773, 661 N.E.2d 520, 524 (1996).

■ The primary rule in statutory construction is to give effect to legislative intent. *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 181, 651 N.E.2d 1105, 1112 (1995). Ordinarily, the statutory language provides the best indicator of legislative intent, and where that language is plain and unambiguous, courts must give it effect without considering other indicia of legislative intent. *First of America*, 166 Ill. 2d at 181, 651 N.E.2d at 1112.

■ Generally, courts give a great deal of deference to an agency's interpretation of a statute that it is charged with administering. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988); *Denton*, 277 Ill. App. 3d at 774, 661 N.E.2d at 524. However, an agency's interpretation is not binding and will be rejected if erroneous. *City of Decatur*, 122 Ill. 2d at 361, 522 N.E.2d at 1222.

## B. Description of the CAAPP

■ The CAAPP provides that any major source of air pollution must apply for a CAAPP permit. 415 ILCS 5/39.5(2)(a)(i) (West 1994). Section 39.5(1) of the Environmental Protection Act (Act) defines "source" as follows:

> " 'Source' means any stationary source (or any group of stationary sources that are located on one or more contiguous or adjacent properties, and are under common control of the same person or persons ***) belonging to a single major industrial grouping. *For the purposes of defining 'source,'* a stationary source or group of stationary sources shall be considered part of a single industrial grouping if *all* of the pollutant[-]emitting activities at such source or group of sources on contiguous or adjacent property *belong to the same Major Group* (i.e., *all have the same two-digit code*) as described in the Standard Industrial Classification Manual, 1987." (Emphasis added.) 415 ILCS 5/39.5(1) (West 1994).

Thus, for the two plants in this case to be considered a single source,

they must (1) be under common control by the same entity; (2) be on contiguous or adjacent property; and (3) belong to a single major industrial grouping. Sources belong to a single major industrial grouping when they have the same two-digit SIC code. No party disputes that CCI owns and operates both plants.

## C. The SIC Codes

■ CCI contends that the Board erred by concluding that the two plants constituted a single source even though they were classified under different two-digit SIC codes. We agree.

The Board does not dispute that the two plants have different SIC codes, nor does it contend that the codes should be changed. Nevertheless, the Board concluded that the plants should be treated as a single "source" despite the fact that their individual operations have different SIC codes because the 4242 plant "supports" the 4000 plant by providing raw materials. The Board explained this conclusion as follows:

> "The Board finds it proper under [s]ection 39.5 of the Act to apply the support[-]facility concept when determining whether two or more facilities are within the same major industrial grouping. *** [T]his conclusion is supported by the fact that the CAAPP's definition of 'source' shares the language[ ] and history[ ] of the federal definition. Additionally, *** in order to avoid imposing contradictory obligations upon the Agency, the support[-]facility analysis must be included ***."

The Board's decision relies on the fact that (1) federal law allegedly incorporates the support-facility concept into the federal definition of "major source"; and (2) Illinois law parallels federal law and section 39.5(3)(a) of the Act expressly requires that the CAAPP must be consistent with federal law, providing as follows: "The Agency shall issue CAAPP permits under this [s]ection consistent with the [CAA] and regulations promulgated thereunder and this Act and regulations promulgated thereunder." 415 ILCS 5/39.5(3)(a) (West 1994).

The Board contends that federal law incorporates the support-facility concept into its definition of "major source" based on (1) language found in the preamble to a proposed federal regulation, which preamble was never adopted (45 Fed. Reg. 52,676 (1980) (preamble to the Prevention of Significant Deterioration regulations)); and (2) the testimony of Ronald Van Mersbergen, a national air permitting expert, who testified that the federal Environmental Protection Agency employs the support-facility concept when determining whether two facilities fall under a single major industrial grouping.

In this case the plain language of the statute, as set forth above, clearly requires that if several stationary sources have *the same two-digit SIC code*, they must be considered to belong to a single major industrial grouping. Accordingly, an industrial grouping is defined by SIC codes. A plain reading of this statute is that if several stationary sources do *not* have the same two-digit SIC code, they do not belong to the same industrial grouping.

Where a statute is clear and unambiguous, as this one is, a court is not at liberty to depart from its plain language and meaning by reading into it limitations or conditions that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83, 630 N.E.2d 820, 823 (1994). By relying on the support-facility concept, the Board improperly looked beyond the unambiguous language of the statute to determine whether the two plants belonged to a single industrial grouping. Accordingly, the Board erred in concluding the plants constituted a single "source" for CAAPP purposes.

## III. CONCLUSION

Because we hold that the two plants do not belong to a single major industrial grouping, we need not resolve whether they are "adjacent" within the meaning of the statute.

For the reasons stated, we reverse the Board's decision and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GARMAN and COOK, JJ., concur.