NOTICE
Decision filed 08/01/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 160199

NO. 5-16-0199

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| HARLAN W. JONES and PHYLLIS L. JONES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners-Appellants, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 14-MR-25 |
| | ) | |
| STATE OF ILLINOIS PROPERTY TAX APPEAL | ) | |
| BOARD and FRANKLIN COUNTY BOARD OF | ) | |
| REVIEW, | ) | Honorable |
| | ) | David K. Overstreet, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Cates and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves the tax status of a manufactured home installed months before the effective date of a change in the applicable law. Prior to January 1, 2011, mobile homes and manufactured homes were taxed as real property only if they were resting on a permanent foundation. 35 ILCS 200/1-130 (West 2008); 35 ILCS 515/1 (West 2008). Under current law, all mobile homes and manufactured homes located outside of mobile home parks are taxed as real property. 35 ILCS 515/1(a) (West 2010); 35 ILCS 517/10(a) (West 2010). The law contains a "grandfather clause," which provides

1

that mobile homes and manufactured homes that were taxed as personal property on the effective date of the amendment will continue to be taxed as personal property until they are sold or transferred or moved to a different location outside of a mobile home park. 35 ILCS 200/1-130(b) (West 2010); 35 ILCS 515/1(b) (West 2010); 35 ILCS 517/10(b) (West 2010). At issue is the applicability of this provision to a manufactured home that was installed before the effective date of the new law but was not assessed or taxed either as real property or as personal property in 2010.

¶ 2    The petitioners, Harlan and Phyllis Jones, installed a manufactured home on their property in May or June of 2010. They did not comply with a requirement that they register the home with the local tax assessor within 30 days. See 35 ILCS 515/4 (West 2008). The tax assessor—who ordinarily completes his assessments by July 1 of each year—did not conduct a new assessment of the petitioners' property after the manufactured home was installed, and the property was therefore assessed and taxed as a vacant lot in 2010. The manufactured home was assessed and taxed as real property beginning in 2011. The petitioners challenged this assessment. The Property Tax Appeal Board upheld the assessment, finding decisive the fact that the petitioners failed to register their manufactured home. The circuit court affirmed this decision. The petitioners appeal, arguing that the decision was clearly erroneous. We reverse.

¶ 3    In July 2009, the petitioners purchased a vacant lot in the village of Valier, Franklin County, Illinois. The property was located across the street from Valier city hall. When they purchased the land, the petitioners lived in Mississippi. They intended to install a modular manufactured home on the lot and live in the home. On September 18,

2

2009, the village of Valier issued a building permit to the petitioners for a 3000 square foot manufactured home.

¶ 4     In March 2010, the petitioners completed vehicle registrations for each of the three modules of the home with the Secretary of State. In April, they filed a vehicle use tax transaction return and paid sales tax for the home.

¶ 5     The petitioners' home was installed on the property during May and June of 2010. As noted previously, they did not file a mobile home registration with the local tax assessor within 30 days of installation as required by statute. See 35 ILCS 515/4 (West 2008). Electric service began late in June 2010, and water service began in July. According to Harlan Jones, he and his wife "began moving into" the home in the spring of 2010; however, they did not immediately begin living there full time.

¶ 6     In December 2010, the petitioners received an assessment notice informing them that the property was being assessed and taxed as a vacant lot. In June 2011, township assessor Gerald Owens performed an assessment of the petitioners' property. He believed that the home on the property was a stick-built house and assessed it as real estate.

¶ 7     In November 2011, the petitioners received a notice of "new construction" assessment. They contested this assessment, arguing that their home was a manufactured home, not a stick-built home. On February 27, 2012, the Franklin County Board of Review issued a notice of final decision on assessed value. It affirmed the township assessor's assessment.

¶ 8     On March 20, 2012, the petitioners filed an appeal of that decision with the Illinois Property Tax Appeal Board. They argued, as they do before this court, that because their

3

home was installed before the effective date of the new law, it should be taxed and assessed under the old law. See 35 ILCS 200/1-130(b) (West 2010); 35 ILCS 515/1(b) (West 2010); 35 ILCS 517/10(b) (West 2010).

¶ 9 The matter came for a hearing in January 2014. Harlan Jones testified that he recently retired after working for 23 years as a mobile home salesman in Mississippi. He and his wife, Phyllis, moved from Mississippi to Illinois to be closer to his brother, who had health problems. As a result of his professional experience, Jones was familiar with the proper way to install manufactured and mobile homes. In the spring of 2009, the Joneses bought land in Franklin County. They then purchased the manufactured home at issue from the Mississippi dealership where Jones worked.

¶ 10 Jones testified that the home was a modular home with three components, each of which came with its own title. When the components were transported to Illinois, the Joneses registered them as vehicles with the Secretary of State and paid tax on them. Jones testified that the home was not placed on a permanent foundation. Instead, it rested on blocks and was held in place by "hurricane straps." Once the home was put together on the lot, the Joneses "started moving in." This took place in the spring of 2010. However, they did not stay there full time, in part because their home in Mississippi had not yet been sold. During 2010, Harlan Jones stayed overnight in the manufactured home a few times, the longest being "about two weeks" in August 2010. While he was there, he used the water and electricity in the home and mowed the yard.

¶ 11    Susi Jones, the petitioners' sister-in-law, confirmed Harlan Jones's testimony that he stayed in the home multiple times during 2010. She testified that before he arrived, she would turn up the air conditioner and turn on the water for him.

¶ 12    Township tax assessor Gerald Owens testified that petitioners' property was located across the street from city hall. Owens was familiar with their property because he saw it each time he went to city hall to pick up forms. He testified that in June 2011, he first went to assess the property because it was on what he called a "911 list" of new addresses to assess for 2011. He did not receive a registration of the mobile home or any other type of notification that the home had been placed on the petitioners' property.

¶ 13    Owens testified that he receives the "911 list" each year in January, and he goes out to assess each property on the list between January and July. He explained that he turns in his assessments on July 1, after which time "it's too late to get them in the process." He testified that he assumed the petitioners' home was a stick-built house because that is what it looked like when he first saw it. However, he did not dispute that the home was in fact a manufactured home.

¶ 14    The hearing officer asked Owens what would have happened had he been aware in late June 2010 that the petitioners' home was a manufactured home. Owens indicated that he could have gone to look at the property to verify that information. The hearing officer then asked who would have turned that information in for a privilege tax on the property, to which Owens responded, "Good question." He then stated that he "would have probably conferred with the supervisor of assessments to determine how to get this turned

5

in the right way." Owens acknowledged that other similar homes were taxed as mobile homes in 2010.

¶ 15    The final witness to testify was Cynthia Humm, of the Franklin County supervisor of assessments office. Humm explained that her department's primary argument was "that the mobile home did not follow the statute in not registering within 30 days of placement." She argued that the "grandfather clause" should not apply because the petitioners' mobile home "never paid a privilege tax in order to have that precedent set."

¶ 16    Humm testified that the privilege tax would have been assessed for 2010 if the county supervisor of assessments had received a registration of the home "either from the property owner or the township assessor." The hearing officer asked, "And a homeowner should learn of this registration [requirement] how?" Humm replied, "Through the news media, and also we sent—and of course, if we didn't know that you had a mobile home, we wouldn't know to send you the registration." At this point, Harlan Jones interjected, "I did have to get a building permit." The building permit was admitted as an exhibit. As stated previously, the permit specified that it was for a manufactured home. Humm testified that the permit would not be accessible to the county supervisor of assessments, but she acknowledged that it would be accessible to the township assessor. She further acknowledged that her office did not place a notice in the newspaper about the registration requirement until December 2010.

¶ 17    The hearing officer asked Humm, "Do you agree that the subject dwelling was installed in 2010?" Humm did not want to stipulate to this fact. She did not dispute that the manufactured home was placed on the property in 2010; however, she testified that

6

there was a factual question as to whether the home was ready for occupancy before 2011. According to Humm, the records her office obtained showed that the water hookup was installed in 2010 but was not turned on until 2011. She explained that in 2012, after the petitioners contested the assessment of their property, her department obtained records from the water department in an effort to determine when the home was ready for occupancy because "this was part of our fact-checking to make sure that we should have put it on real estate and not privilege tax."

¶ 18    The petitioners offered into evidence several exhibits to support Mr. Jones's testimony. Among these exhibits were the building permit issued by the village of Valier for a 3000 square foot manufactured home and billing records showing water and electricity usage during the latter half of 2010.

¶ 19    Also admitted into evidence was a memorandum from the Illinois Department of Revenue explaining the implementation of the new legislation at issue in this appeal. The memorandum contained a frequently asked questions section, which specifically addressed essentially the same situation involved in this appeal—the assessment and taxation of mobile or manufactured homes that were installed "after the assessment cycle was completed" in 2010 and were "not on the tax rolls." The memo stated:

> "The department advises that these homes should be assessed uniformly with other mobile and manufactured homes in the county as provided in the Property Tax Code and Mobile Home Local Services Tax Act in effect for assessment year 2010. If mobile or manufactured homes on private property were assessed as real property, then that same classification should be used. *If, however, the mobile or*

*manufactured home[s] of similar construction were taxed under the Mobile Home Local Services Tax Act, then the home should be taxed under that Act*." (Emphasis added.)

¶ 20    On March 21, 2014, the Property Tax Appeal Board issued its final administrative decision. The hearing officer first noted that the following three facts were undisputed: (1) the petitioners' home was a mobile or manufactured home; (2) it was placed on their property in May or June of 2010; and (3) the property was assessed as a vacant lot in 2010. She then noted that neither party presented any evidence on whether the installation requirements of the new legislation were met, but she further noted that the Franklin County Board of Review did not dispute that the home was "installed" in 2010. Turning to the question of when the property was fit for occupancy, the hearing officer specifically found credible the petitioners' evidence that water and electric service and usage began during the summer of 2010.

¶ 21    The hearing officer went on to find that "the most crucial issue" in the case was the fact that the home was never registered as required by section 4 of the Mobile Home Local Services Tax Act (Mobile Home Tax Act) (35 ILCS 515/4 (West 2008)). She explained that registration, even before the change in the law, was a "prerequisite to [taxation under] the Mobile Home Local Services Act." She acknowledged that the petitioners, who never received notice of the registration requirement, "present[ed] a sympathetic argument." However, she concluded that the home was properly taxed as real property.

¶ 22     On April 23, 2014, the petitioners filed a petition in the circuit court seeking review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). On April 14, 2016, the circuit court affirmed the decision of the Property Tax Appeal Board in a docket entry. The court noted that the "home was never taxed under the Mobile Home Tax Act primarily because [the petitioners] failed to register the property as required, both before and after January 1, 2011." The court concluded that the Property Tax Appeal Board's decision was supported by evidence and was not clearly erroneous. This appeal followed.

¶ 23     On appeal from a decision under the Administrative Review Law, we review the final decision of the agency, not the decision of the circuit court. *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 773 (1996). The appropriate standard of review depends on whether the appeal presents a question of fact, a question of law, or a mixed question of fact and law. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Resolution of this appeal requires us to construe several relevant statutory provisions. Statutory construction is a question of law subject to *de novo* review. *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 324 Ill. App. 3d 961, 965 (2001). This appeal also requires us to determine the legal effect of the petitioners' failure to timely register the manufactured home. This is a mixed question of fact and law, to which "the more deferential 'clearly erroneous' standard of review applies." *AFM Messenger*, 198 Ill. 2d at 391. An agency's decision is clearly erroneous if it leaves this court with the firm conviction that a mistake has been made. *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 843 (2009).

9

¶ 24    Our primary goal in statutory construction is to ascertain and effectuate the intent of the legislature. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The best indication of legislative intent is the language of the statutes themselves. When this language is clear and unambiguous, we must apply the statutes as written without resorting to tools of statutory interpretation. On the other hand, if the statutory language is ambiguous, we must rely on such tools to help us discern its meaning. *Id.*

¶ 25    One principle of statutory interpretation is the presumption that the legislature intended for statutes relating to the same subject "to be consistent and harmonious." *Id.* at 60. We must therefore consider all of the provisions of the enactment as a whole, rather than in isolation. *Id.* Although we presume that the legislature did not intend an absurd, inconvenient, or unjust result (*id.*), we may not read into the statutes any exceptions, limitations, or conditions that are contrary to the legislature's intent (*JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010)). However, if the legislative intent is "otherwise clear," we may read into the statutes language "which has been omitted through legislative oversight." *DeLuna*, 223 Ill. 2d at 60. Finally, although we give substantial deference to an agency's interpretation of a statute it administers, the agency's interpretation is not binding on this court, and we will reject it if we find it to be erroneous. *Denton*, 277 Ill. App. 3d at 774.

¶ 26    This appeal involves Public Act 96-1477 (eff. Jan. 1, 2011), which enacted the Manufactured Home Installation Act (Installation Act) (35 ILCS 517/1 *et seq.* (West 2010)) and amended portions of the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2008)) and the Mobile Home Tax Act (35 ILCS 515/1 *et seq.* (West 2008)). Prior to the

10

effective date of the new law, a mobile home was included in the statutory definition of real property only "if the structure [was] resting in whole on a permanent foundation." 35 ILCS 200/1-130 (West 2008). Similarly, mobile homes resting on permanent foundations were excluded from the Mobile Home Tax Act's definition of a mobile home. Such homes were "assessed and taxed as real property." 35 ILCS 515/1 (West 2008). Mobile homes not resting on permanent foundations were instead subject to a "privilege tax" based on square footage. 35 ILCS 515/3 (West 2008). (We note parenthetically that prior to the enactment, the relevant statutes referred only to "mobile homes," and not to "mobile or manufactured homes." For purposes of the amendments in the new legislation, mobile homes and manufactured homes are synonymous. 35 ILCS 515/1(a) (West 2010).)

¶ 27    Beginning January 1, 2011, the new legislation eliminated the distinction between mobile homes resting on permanent foundations and those not resting on permanent foundations. See Pub. Act 96-1477, § 805 (eff. Jan. 1, 2011) (amending 35 ILCS 200/1-130 (West 2008)) (removing this definitional language). Instead, the new law provides that all mobile homes and manufactured homes installed outside of mobile home parks on or after its effective date are to be assessed and taxed as real estate. 35 ILCS 515/1(a) (West 2010) (providing that "[m]obile homes and manufactured homes outside of mobile home parks must be assessed and taxed as real property"); 35 ILCS 517/10(a) (West 2010) (providing that "a mobile home or manufactured home installed on private property that is not in a mobile home park on or after the effective date of this Act must be *** classified, assessed, and taxed as real property").

11

¶ 28    At issue here is a "grandfather clause" for mobile homes that were assessed and taxed as personal property under the Mobile Home Tax Act before the new law went into effect. That provision appears in three different statutes. Section 1-130(b) of the Property Tax Code provides that "mobile homes and manufactured homes that *** are taxed under the Mobile Home Local Services Tax Act on the effective date of this amendatory Act *** shall continue to be taxed under the Mobile Home Local Services Tax Act." 35 ILCS 200/1-130(b) (West 2010). The statute further provides that mobile and manufactured homes "that are classified, assessed, and taxed as real property" on the effective date of the new legislation "shall continue to be classified, assessed, and taxed as real property." *Id.* Section 10(b) of the Installation Act contains identical language. 35 ILCS 517/10(b) (West 2010). Similarly, section 1(b) of the Mobile Home Tax Act provides, "Mobile homes and manufactured homes that *** are taxed under this Act on the effective date of [the amendments] must continue to be taxed under this Act," but mobile homes and manufactured homes that are already "classified, assessed, and taxed as real property *** must continue to be classified, assessed, and taxed as real property." 35 ILCS 515/1(b) (West 2010).

¶ 29    All three statutes address the taxation of mobile homes and manufactured homes that were taxed as real property before the new law went into effect—they continue to be taxed as real property; and all three statutes address the taxation of mobile homes and manufactured homes that were taxed as personal property under the Mobile Home Tax Act prior to the effective date of the new law—they continue to be taxed under that act. The Installation Act addresses the taxation of mobile homes or manufactured homes that

12

are "installed on private property that is not in a mobile home park *on or after the effective date of this Act*," providing that such homes "must be \*\*\* classified, assessed, and taxed as real property." (Emphasis added.) 35 ILCS 517/10(a) (West 2010). However, none of these provisions explicitly address the assessment or taxation of mobile homes or manufactured homes that were installed prior to the effective date of the new law but were not taxed or assessed under either provision of the old law because they were installed after the local assessor completed assessments for the year.

¶ 30    The petitioners contend that under the "plain and ordinary meaning" of these statutes, all mobile homes and manufactured homes that were in place before the effective date of the new law must continue to be taxed in the same manner they were taxed previously. Both respondents argue that the statutes unambiguously provide that the Mobile Home Tax Act's "privilege tax" is only available to homeowners who have previously paid that tax. We do not find either interpretation persuasive. The problem with the petitioners' argument is that it overlooks the fact that their manufactured home was not taxed *either* as real property or as a mobile home prior to January 2011. They do not claim their property should continue to be taxed as a vacant lot. The problem with the respondents' argument is that it overlooks statutory language expressly limiting the temporal reach of the new law to mobile homes that are installed "on or after the effective date" of the legislation. 35 ILCS 517/10(a) (West 2010). For the reasons we just discussed, we conclude that the legislation failed to address mobile homes and manufactured homes that, like the petitioners' home, were not installed on or after the effective date of the new legislation and were not assessed and taxed in 2010. We note

that a relatively small number of homes are likely to fit into this category. Thus, we presume that this omission was a legislative oversight.

¶ 31    The Franklin County Board of Review argues that any ambiguity created by this omission must be resolved in favor of less preferential tax treatment. See *People ex rel. Kassabaum v. Hopkins*, 106 Ill. 2d 473, 476 (1985) (explaining that statutory provisions granting tax exemptions or "special tax treatments" should be strictly construed). This argument correctly describes an important tool for statutory construction. However, consideration of the interpretation given to this legislative scheme by one of the agencies charged with administering it—the Illinois Department of Revenue—leads us to a different conclusion.

¶ 32    As we discussed previously, guidelines supplied by the Department of Revenue in a memorandum directed local taxing authorities to treat mobile homes that were *not* on the 2010 tax rolls the same way similar mobile homes that *were* on the tax rolls were treated. It is worth noting that, prior to the petitioners' challenge in this case, the Franklin County supervisor of assessments appeared to agree with the interpretation of the Department of Revenue. As noted earlier, Cynthia Humm testified that after the petitioners challenged the assessment of their home, her investigation focused on determining whether the home was ready for occupancy before the effective date of the new law. It was because she believed evidence showed that the home was not ready for occupancy until 2011 that Humm refused to stipulate that the home was "installed" in 2010. This inquiry would have been irrelevant if the supervisor of assessments interpreted the law in the manner now urged by the respondents in this appeal. Under that

14

interpretation, the petitioners' home would not be eligible to be taxed under the Mobile Home Tax Act *regardless* of whether it was ready for occupancy—and, therefore, deemed to be "installed"—before the new law went into effect on January 1, 2011.

¶ 33 The respondents argue, however, that the petitioners' home does not fall within the category of homes addressed by the Department of Revenue's guideline. They contend that this is so because the home was placed on the property sometime in May, which left ample time for the home to be assessed under the Mobile Home Tax Act if only the petitioners had complied with the registration requirement. We note that at oral argument, all parties agreed that the home would not have been assessed and taxed under the Mobile Home Tax Act had the petitioners complied with the registration requirement. This acknowledgement notwithstanding, we are not persuaded by the respondents' contention.

¶ 34 The version of the relevant statute in effect in 2010 required the owners of "inhabited mobile homes" to file a registration with the local tax assessor "within 30 days after initial placement" of the home and within 30 days after the home is moved. 35 ILCS 515/4 (West 2008). Among the information to be included in the registration form is the date on which the home became inhabited. *Id.* The hearing officer in this case did not make explicit findings as to the date on which the home was ready for occupancy or the date on which Harlan Jones began staying in it, but the record reveals that the home was placed on the property sometime late in May 2010, electric service to the home began on June 22, 2010, and water service began on July 22, 2010. The local assessor, Gerald Owens, testified that he was able to perform assessments "right up to the deadline," and he usually turned in his assessments by July 1. Section 9-245 of the Property Tax Code

provided that the deadline for turning in assessments to the county board of review was the third Monday in June. 35 ILCS 200/9-245 (West 2008). In 2010, the third Monday in June was June 21. Although the home was physically in place before this date, the petitioners were not required to file the registration until the end of June, and it was not realistic to expect a reasonable homeowner to register the home at any earlier time considering it was likely not occupied until July, when water service began. Thus, the home was not on the Franklin County tax rolls for 2010 because it was installed too late for it realistically to be assessed before the assessment cycle was complete. As such, it fits squarely within the category addressed by the Department of Revenue's memorandum.

¶ 35    The respondents' final contention is that the hearing officer correctly concluded that the petitioners' failure to register the home was decisive. We disagree.

¶ 36    In support of their contention, the respondents point out that the amended version of the statute requiring registration gives homeowners additional time to comply with the registration requirement. More precisely, the amended version of the statute provides that owners of inhabited mobile homes already placed must file the required registration within 30 days after the effective date of the new law. 35 ILCS 515/4 (West 2010). Like the previous version, the amended version of the statute also requires that mobile homes be registered within 30 days after they are initially installed or moved to a different location. *Id.* The two versions of the statute are substantially similar. There is, however, one key difference—the amended version also requires homeowners to record the certificate of title to their mobile home or manufactured home. *Id.* Thus, we do not read

the requirement of filing a new registration within 30 days after the effective date of the amendments as giving homeowners extra time to comply with the registration requirement in order to have their home "grandfathered in" on the "privilege tax"; rather, we read it as giving homeowners a deadline to comply with the new recording requirement.

¶ 37    As discussed previously, the hearing officer found that registration under section 4 was a "prerequisite" to eligibility for the "privilege tax." The respondents urge us to accept this interpretation. However, we can find no language in either version of the statute to support this proposition. Significantly, the amended version provides, "Failure to record or surrender the title or certificate of origin shall not prevent the home from being assessed and taxed as real property." 35 ILCS 515/4 (West 2010). This indicates that assessing officials must assess and tax property according to its proper classification regardless of whether homeowners comply with the registration requirement. Our interpretation is bolstered by the fact that the statutes governing the applicability of the privilege tax use mandatory language; they provide that such homes "must" or "shall" be assessed and taxed under the Mobile Home Tax Act. See 35 ILCS 200/1-130(b) (West 2010); 35 ILCS 515/1(b) (West 2010); 35 ILCS 517/10(b) (West 2010). We find that registration is not a prerequisite for taxation under the Mobile Home Tax Act.

¶ 38    Finally, we note that failure to comply with the registration requirement is a Class A misdemeanor. 35 ILCS 515/4 (West 2010). Holding that the petitioners' home must be assessed and taxed at a higher rate than would otherwise be applicable on an ongoing basis would be an arbitrarily harsh penalty for a minor infraction.

¶ 39    For all of these reasons, we conclude that the decision of the Property Tax Appeal Board was clearly erroneous. We therefore reverse the judgment of the circuit court and set aside the decision of the Property Tax Appeal Board.

¶ 40    Circuit court judgment reversed; Property Tax Appeal Board decision set aside.

2017 IL App (5th) 160199

NO. 5-16-0199

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| HARLAN W. JONES and PHYLLIS L. JONES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners-Appellants, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 14-MR-25 |
| | ) | |
| STATE OF ILLINOIS PROPERTY TAX APPEAL | ) | |
| BOARD and FRANKLIN COUNTY BOARD OF | ) | |
| REVIEW, | ) | Honorable |
| | ) | David K. Overstreet, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed:**        **August 1, 2017**

_____

**Justices:**        Honorable Melissa A. Chapman, J.

                     Honorable Judy L. Cates, J., and
                     Honorable John B. Barberis, J.,
                     Concur

_____

**Attorney
for
Appellants**        David B. Garavalia, 417 North Main Street, P.O. Box 396, Benton, IL
62812-0396

_____

**Attorneys
for
Appellees**        Lisa Madigan, Attorney General, State of Illinois, David L. Franklin, Solicitor
General, Valerie Quinn, Assistant Attorney General, 100 West Randolph Street,
12th Floor, Chicago, IL 60601 (attorneys for Illinois Property Tax Appeal
Board)

                  Evan L. Owens, Franklin County State's Attorney, Amanda Levanti, Assistant
State's Attorney, 411 East Main Street, Benton, IL 62812 (attorneys for Franklin
County Board of Review)

_____